# CHARLESTON.

STATE *ex rel* W. H. COKELEY *v.* W. P. IRELAND *et al.*

Submitted July 26, 1922. Decided July 27, 1922.
(Opinion filed September 12, 1922.)

1.  AGRICULTURE—*County Court Authorized and Required to Levy and Appropriate Part of Salary of County Agent Where Other Part is Paid By Agricultural College.*

    Under chapter 120, Acts of Legislature 1921, amending section 28, chapter 39 of the Code, whenever a number of farmers, not fewer than one hundred and fifty, file with the county court a memorandum of understanding with the Agricultural Extension Division of the College of Agriculture of the West Virginia University, whereby such Extension Division agrees to provide part of the salary of a county agent or agents to the end of the next succeeding fiscal year, then the county court of such county is authorized and required to levy for and appropriate from the general fund an amount sufficient to pay the other part of such salary, but not exceeding one and one-half cents on the hundred dollars assessed valuation. (p. 437).

    91 W. Va.

2. SAME—*Federal Aid to Any Portion of County Agricultural Agent's Salary Appropriated Upon Condition That Like Amount Be Contributed By State.*

The funds used by such Extension Division, for the payment of its part of the county agent's salary are derived from Federal aid, appropriated under what is known as the Smith-Lever Act, Barnes' Federal Code, 1919, sections 8413 to 8420; under that act fifty per cent of the funds used in agricultural extension work is contributed by the Federal Government, upon condition that a like amount be contributed by the state, or some of its agencies, or by other contributions. (p. 440).

3. SAME—*County Court Required to Provide By Levy for Fifty Per Cent of County Agent's Salary Where Federal Aid Accepted; County Court Has No Discretion Either as to Person Employed as County Agent or Amount of Salary.*

The state having given its assent to the provisions of the "Smith-Lever Act," and having provided no funds for the payment of its part of the county agent's salary, other than by the county court, the county court is required to provide by levy for the remaining fifty per cent of such salary, and it has no discretion in the premises, either as to the person employed as such county agent, or as to the amount of his salary. (p. 441.)

4. SAME—*County Agent and Amount of Salary Determined By Agreement Between Extension Division of Agricultural College and Farmers Acting With it.*

The person so employed and the amount of his salary are determined by agreement between such body of farmers and the Agricultural Extension Division of the College of Agriculture of the West Virginia University. (p. 442.)

Mandamus by the State, on the relation of W. H. Cokeley, against the County Court of Ritchie County, to require defendant to appropriate from the general funds of that county, or, if sufficient funds are not available in that county, to levy a sufficient tax upon the taxable property within the limits of the county not in excess of 1½ cents on the $100 of assessed valuation to pay $125 per month as the annual salary of the county agent for Ritchie County.

*Writ awarded.*

*R. S. Blair,* for relators.
*Thomas J. Davis,* for respondent.

MEREDITH, JUDGE:

Petitioners ask for a writ of mandamus to require the county court of Ritchie County to appropriate from the General Fund of that county, or if sufficient funds are not available in that fund, to levy a sufficient tax upon the taxable property within the limits of the county, not in excess of one and one-half cents on the one hundred dollars of assessed valuation, to pay $125 per month as salary of the county agent for Ritchie County for the period beginning July 1, 1922, and ending July 1, 1923.

From the petition it appears that a County Farm Bureau has been organized by the farmers of Ritchie County, consisting of at least 150 members, and pursuant to Chapter 120, Acts of the Legislature, 1921, revising, amending, and re-enacting section 28, chapter 39, Code, they filed with the county court of that county a "memorandum of understanding" with the Agricultural Extension Division of the College of Agriculture of the West Virginia University, whereby such Extension Division agreed to provide one-half of the salary of the county agent of Ritchie County for the period mentioned, and petitioned the county court to levy for and appropriate from the General Fund an amount sufficient to pay a like sum upon such salary, the agreed salary being $250 per month. The county court offered to contribute $100 per month, but refused to contribute the amount requested, or $125 per month, the court claiming that it had a right in part at least to determine the amount of salary to be paid to such county agent. It also claimed that a competent county agent could be obtained at a salary of $200 per month. The sole question involved in this case is whether the county court has any discretion in the premises.

The original statute, chapter 89, Acts 1915, provided: "Whenever a county agricultural organization with not less than fifty members, files with the county court of the county a memorandum of understanding with the Agricultural Extension Department of the College of Agriculture, West Virginia University, guaranteeing the payment by said county organization of the field and office expenses of a county agent or agents to the end of the next succeeding

fiscal year, then the county court of such county is hereby authorized to, and it may levy and appropriate from the general fund an amount not to exceed one and one-half cents on the one hundred dollars' assessed valuation.''

That statute leaves it discretionary with the county court whether it will levy and appropriate any sum for the payment of the salary or salaries of the person or persons mentioned therein. But chapter 120, Acts 1921, reads quite differently. It says:

> ''Whenever a number of farmers, not fewer than one hundred and fifty, file with the county court of the county a memorandum of understanding with the Agricultural Extension Division of the College of Agriculture, West Virginia University, whereby the Extension Division of the College of Agriculture agrees to provide part of the salary of a county agent or agents to the end of the next succeeding fiscal year, then the county court of such county is hereby authorized to, and it shall levy for or appropriate from the general fund an amount not to exceed one and one-half cents on the one hundred dollars assessed valuation. The money so appropriated shall be used for payment of part of the salary and expenses of person or persons to encourage demonstrations of improved methods on the farm and in the home and to give free advice and practical instruction in agriculture and home economics in such County, in co-operation with and under the supervision of the said Agricultural Extension Division of the West Virginia University. All moneys so appropriated shall be expended upon orders of the county court as other county funds are expended, and a duplicate of all salary vouchers and expense accounts shall be filed with the said Agricultural Extension Division in such form as will comply with the provisions of the act of Congress approved May eighth, one thousand nine hundred and fourteen, known as the Smith-Lever act.''

That amendment makes a very material change in the statute; it substitutes for the words ''it may levy and appropriate'' the words ''it shall levy for or appropriate,'' manifesting a clear intention to leave no discretion in the county court as to the propriety of making such levy or appropria-

tion. The respondents do not contend that they have any discretion in making a levy or appropriation for such purposes, their contention being that they do, however, have a discretion as to the amount of the levy or appropriation; and they argue that since money so appropriated is to be used for the payment of *part* of the salary and expenses of the county agent, but the statute does not say what part, that it is left to the discretion of the county court to say what part shall be paid by it. There might be some force in this contention if we did not know just what part the Agricultural Extension Division of the College of Agriculture is to provide, and also the source of its fund. It derives its fund for this purpose from the Federal Government under the "Smith-Lever Act." That act is found in U. S. Compiled Statutes, 1916, sections 8877-A to 8877-H, and in Barnes' Federal Code, 1919, sections 8413-8420. Section 3 of the act (Barnes' Code, section 8415) reads as follows:

"For the purpose of paying the expenses of said cooperative agricultural extension work and the necessary printing and distributing of information in connection with the same, there is permanently appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $480,000 for each year, $10,000 of which shall be paid annually, in the manner hereinafter provided, to each State which shall by action of its legislature assent to the provisions of this Act: Provided, That payment of such installments of the appropriation hereinbefore made as shall become due to any State before the adjournment of the regular session of the legislature meeting next after the passage of this Act may, in the absence of prior legislative assent, be made upon the assent of the governor thereof, duly certified to the Secretary of the Treasury: Provided, further, That there is also appropriated an additional sum of $600,000 for the fiscal year following that in which the foregoing appropriation first becomes available, and for each year thereafter for seven years a sum exceeding by $500,000 the sum appropriated for each preceding year, and for each year thereafter there is permanently appropriated for each year the sum of $4,100,000 in addition to the sum of $480,000 hereinbefore provided: Provided further, That before the funds herein appropriated shall become available

to any college for any fiscal year plans for the work to
be carried on under this Act shall be submitted by the
proper officials of each college and approved by the
Secretary of Agriculture. Such additional sums shall
be used only for the purposes hereinbefore stated, and
shall be allotted annually to each state by the Secretary
of Agriculture and paid in the manner hereinbefore
provided, in the proportion which the rural population
of each State bears to the total rural population of all
the States as determined by the next preceding Fed-
eral census: Provided further, That no payment out
of the additional appropriations herein provided shall
be made in any year to any State until an equal sum
has been appropriated for that year by the legislature
of such State, or provided by State, county, college,
local authority or individual contributions from within
the State, for the maintenance of the co-operative agri-
cultural extension work provided for in this Act.''

It will be observed that this section shows the amount of
Federal aid, the time or times of payment, and the conditions
upon which such aid will be given. One of the conditions is
that the state ''shall by action of its legislature assent to the
provisions of this act.'' Such assent was given by the legis-
lature of West Virginia by joint resolution No. 4, adopted
February 1, 1915. (Hogg's Code, Supplement 1918, section
2247-A.)

The section above quoted provides that no payment out of
the additional appropriations therein provided shall be made
in any year to any state until an equal sum has been appro-
priated for that year by the legislature of such state or pro-
vided by state, county, college, local authorities or individual
contributions from within the state for the maintenance of
the co-operative agricultural extension work provided for in
the act, clearly showing that the Federal aid was to cover
fifty per cent of the cost. It is from this fund and from this
fund only, so far as we can ascertain, that the Agricultural
Extension Division of the College of Agriculture, West Vir-
ginia University, provides its part of the salary of the county
agent. Where is the other part to come from, if not from the
county court? No other source is provided by law. Of
course, provision might be made by voluntary contributions as

was done under the original act of the legislature, chapter 89, Acts 1915; section 28, chapter 39, Code; but, as already shown, under that act, even though the field and office ex-penses of the county agent were guaranteed by the county agricultural organization, yet the county court was not bound to provide for the payment of the county agent's salary. So, reading the Smith-Lever Act together with chapter 120, Acts 1921, and the joint resolution of the legislature giving its assent to the Smith-Lever Act, we are of opinion that the legislature intended that the county court should appropriate the full one-half, or fifty per cent, of the salary of the county agent.

The county agent is nominated, named or selected by the Agricultural Extension Division, not by the county court. Before such agent can be nominated and his full salary be secured, the Extension Division must obtain the co-operation of at least 150 farmers of the county and must enter into a contract with them called a "memorandum of understanding" whereby the Extension Division agrees to pay one-half of the agent's salary. Upon the filing of this memorandum with the county court by at least 150 farmers of the county, then the county court is obliged to provide the other half of the agent's salary. The part of the salary paid by the county court is raised by direct taxation; a considerable proportion is thus paid by the 150 farmers who join in the contract or memo-randum of understanding with the Extension Division. They are directly interested in securing the best qualified person as county agent, and at the lowest possible cost. Before a contract is made, they and the Extension Division must agree both upon the person who is to be employed as county agent, and the amount of his salary. We know of no body of men and women better fitted to guard the county treasury than any one hundred and fifty farmers who are interested in agricultural extension work.

They are progressive; by their co-operation the educational advantages of the university are brought to the farm and farm home. In this way those who can not go to the uni-versity have the university brought to them. We know of no better or more effective plan to advance the interests of the

people of the state. The great body of our people are directly interested in farming, and the progressive farmers can be trusted in selecting their county agent and in fixing his salary.

An additional safeguard is provided in the Smith-Lever Act. The college of agriculture is required to make reports to the governor of the state, showing the character of the extension work done, and detailed statements of receipts and expenditures from all sources; and in turn, the state officer authorized to receive the Federal aid funds is required to report such receipts and disbursements to the Secretary of Agriculture of the United States. If the Secretary of Agriculture finds that the funds have been improperly expended, he may withhold further contributions, in which event the state may appeal to Congress at its next succeeding session.

We, therefore, hold that the county court has no discretion under the statute in determining the part of the county agent's salary it is to pay. The person employed as agent and the amount of his salary are determined by agreement between the body consisting of not fewer than one hundred and fifty farmers of the county and the Agricultural Extension Division of the College of Agriculture of the West Virginia University.

For the foregoing reasons, the writ will issue.

*Writ awarded.*