BAILEY et al. v. VAN DYKE, County Clerk and Auditor, et al.

No. 4244. Decided October 9, 1925. (240 P. 454.)

1. AGRICULTURE—STATUTE AUTHORIZING COUNTY COMMISSIONERS TO CONTRACT FOR AGRICULTURAL EXTENSION WORK NOT UNCONSTITUTIONAL AS AUTHORIZING EXPENDITURES OF PUBLIC MONEY FOR PRIVATE PURPOSE. Agricultural extension work, as defined by U. S. Comp. St. § 8877b, and Comp. Laws Utah 1917, §§ 5290-5296, is not in the nature of private enterprise, but of a public

and general character, for the public welfare, and hence Comp. Laws Utah 1917, § 5292, authorizing county commissioners to enter into contract for agricultural extension work and to provide funds therefor, is not unconstitutional as violating Const. Utah, art. 6, § 31, as providing public funds for a private purpose.

2.  AGRICULTURE—STATUTE AUTHORIZING COUNTY COMMISSIONERS TO CONTRACT FOR AGRICULTURAL EXTENSION WORK HELD NOT TO IMPOSE A TAX FOR COUNTY PURPOSES. Comp. Laws 1917, § 5292, authorizing county commissioners to enter into contract for agricultural extension work, *held* not to violate Const. art. 13, § 5, as imposing a tax for county purposes by the Legislature.[1]

3.  COUNTIES—NO AUTHORITY FOR APPEAL ON BEHALF OF COUNTY FROM ACTION OF BOARD OF COUNTY COMMISSIONERS IN ALLOWING A CLAIM AGAINST COUNTY. There is no authority for an appeal in behalf of county from the action of a board of county commissioners in allowing a claim against the county.

4.  INJUNCTION—BOARD OF COUNTY COMMISSIONERS EXERCISES JUDICIAL FUNCTIONS, AND ITS DETERMINATIONS ON QUESTIONS OF FACT CONCLUSIVE AND NOT INTERFERED WITH BY INJUNCTION, IN ABSENCE OF FRAUD OR CORRUPTION. In the audit and allowance of claims against the county, board of county commissioners exercises judicial functions, and its determinations on questions of fact with respect thereto will not be interfered with by injunction, in absence of fraud or corruption, or unless claim was of a kind unauthorized by law.[2]

5.  COUNTIES—MERE IRREGULARITIES IN PRESENTATION OR ALLOWANCE OF CLAIMS NOT GROUNDS FOR JUDICIAL INTERFERENCE. In the presentation or allowance of claims against county, mere irregularities or erroneous decisions of questions of fact are not grounds for judicial interference.

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

1 *State* v. *Standford*, 24 Utah, 148, 66 P. 1061.
2 *Salt Lake County* v. *Clinton*, 39 Utah, 462, 117 P. 1075.
Corpus Juris-Cyc. References.
[1]  Agriculture 2 C. J. p. 989 n. 21.
[2]  Agriculture 2 C. J. p. 989 n. 21.
[3-5]  Counties 15 C. J. p. 458 n. 76; p. 642 n. 66; p. 655 n. 61; p. 658 n. 94, 95; p. 659 n. 99; Injunctions 32 C. J. p. 270 n. 32 New.

Suit by Hyrum S. Bailey and others against L. A. Van Dyke County Clerk and Auditor of Weber County, and another, to restrain the payment of the claim in favor of the State Agricultural College. From a judgment dismissing action, plaintiffs appeal.

AFFIRMED.

*A. G. Horn,* of Odgen, for appellants.

*Chez & Douglas,* of Ogden, and *W. H. Folland* and *Frank Evans,* both of Salt Lake City, for respondents.

CHERRY, J.

The plaintiffs, as residents and taxpayers of Weber county, brought this action against Weber county, and its auditor and treasurer, to restrain the payment of a claim for $1,250 in favor of the Agricultural College of the state, which had been presented to and allowed by the board of county commissioners. A demurrer to the plaintiffs' complaint was sustained, and the. action dismissed, from which judgment plaintiffs appealed.

The complaint alleges that in January, 1923, the defendant Weber county entered into an agreement with the Weber county farm bureau, the Agricultural College of the state of Utah, and the director of the United States Extension Service (Department of Agriculture), a copy of which is set forth. Omitting formal and irrelevant portions, the agreement is as follows:

"Effective January 1, 1923.

"The object of the work under this memorandum of understanding shall be to conduct agricultural field studies and demonstrations, to carry on home economics work with farm women, to stimulate agricultural and home activities among boys and girls, and to assist in stimulating better business methods on the farm and in the home of Weber county.

"In performing this work it is understood that the following plan will be followed:

"(1) The Weber County farm bureau, and county commissioners, the Agricultural College of Utah, and the United States Department of Agriculture agree to co-operate in the conduct of extension work in agriculture and home economics within the county under the system of county extension work provided for in sections 5290 to 5296, Compiled Laws of Utah 1917, and the Acts of Congress of May 6 and June 30, 1914. * * *

"(2) The county commissioners shall pay to the financial secretary of the Utah Agricultural College on November 1st the sum of $1,250.00 and on February 1st the sum of $1,250.00 to assist the extension service of the Utah Agricultural College in paying the salaries and field expenses of a county agricultural agent and a home demonstration agent; provided, however, that no payments shall be made until verified claims are filed by said county agent and said home demonstration agent, showing that they have actually devoted to field work in Weber county that portion of their time for which the compensation is claimed.

"(3) The Extension Service, representing the United States Department of Agriculture and the Utah Agricultural College, shall employ a county agricultural agent and a home demonstration agent to do extension work in Weber county, and shall pay the entire salaries and expenses out of the county, state, and federal budgets provided for such work. The employment of these agents shall be effective July 1, 1922, and shall continue until service is discontinued in accordance with paragraph 8 of this contract.

"(4) The farm bureau executive committee and the extension director, or his official representative, shall make out an annual budget covering the proposed expense of the agents for the fiscal year, and submit to the county commissioners not later than May 30th of each year.

"(5) The farm bureau and the extension agents shall outline a definite county program of extension work for each calendar year. The program of work and projects, including a budget of each agent's time, shall be submitted to the extension director not later than April 1st of each year, for his suggestions and approval.

"(6) The county agents shall devote their entire time to the work of the county, except as they are called in to state and district conventions, unless otherwise agreed to by the cooperation parties. These agents will be under the general supervision of the state leaders in charge of the respective lines of work, and the agents will be at all times subject to the rules and regulations of the Agricultural College of Utah and the United States Department of Agriculture.

"(7) The county agricultural agent shall be held responsible for all administrative work in the county. The agents shall prepare reports covering all work done by them as provided by rules

and regulations of the service. Annual reports shall be prepared each year by the agents. These shall be signed by the agents concerned and approved by the state leaders. One copy of all reports made shall be sent to the county commissioners, one to the Extension Service, and one to the county farm bureau office.

"(8) ' Any' party to this agreement desiring to discontinue co-operation in the employment of any of these agents must serve notice in writing to the other co-operating parties concerned at least sixty days prior to the 30th of June of each year, except by mutual agreement among the co-operating parties."

It is alleged that, pursuant to the terms of the agreement, Preston W. Thomas was appointed county agent, and ever since has claimed to be acting as such, but that "he did not do or perform any services such as are contemplated by law or by said contract, but, on the contrary, has performed other service for the farm bureau, which services were mostly performed outside of Weber county, Utah"; that the Agricultural College has filed a claim for $1,250 claimed to be due under the contract, which has been allowed by the board of county commissioners, but not yet paid, and, unless enjoined, will be paid.

It is then further alleged that the Agricultural College has not incurred any field expenses for extension agents in Weber county during the term of the contract; that no annual budget covering the proposed expenses of the county agent has ever been submitted to the Board of County Commissioners of Weber county, nor has any one outlined a county program of extension work for each calendar year, nor has any program of work or projects, including the budget of the county agents' time and work, ever been submitted to such extension director for his suggestions or approval, nor did said agent prepare any reports as provided by the rules or regulations of the service or otherwise, but, on the contrary, said county agent has devoted his entire time to private interests in the projects of buying dairy cattle and attempting the controlling of crop pests, including rodents, insects, and contagious diseases, quarantine and inspection of live stock, weed control, and in the organization of private enterprises and corporations for the purpose of controlling and regulating the prices of farm com-

modities, and has entirely failed to do and perform the duties of his office, as provided for in section 5291 of Comp. Laws Utah 1917 and the acts of Congress pertaining to county agents; that said county agent has not visited from farm to farm or held any demonstrations pertaining to the introduction of crops, new methods of cultivation or new machinery, nor has he acted as an instructor in educational lines as contemplated by said act creating said office; that the Weber county farm bureau is a private organization, and during the year 1923 did not consist of over 500 farmers in Weber, Davis, and Box Elder counties, and that all of its acts pertaining to said contract were unauthorized by law, and that the attempt to appropriate the funds of Weber county under said contract is an attempt to appropriate public money to private uses; that said county agent has devoted time in building up said farm bureau in counties outside of Weber county, and all of his efforts have been done and performed for said bureau and along lines not contemplated in the laws of Utah, and that said efforts consisted mainly in going east and buying cattle, organizing egg and milk associations, to regulate the prices of eggs and milk, and other similar mercantile enterprises, and has never done anything for farmers who are not members of said bureau, but has done the same for the farmers of Davis and Box Elder counties, to the exclusion of the farmers of Weber county.

It is alleged that the officers of Weber county arbitrarily refuse to withhold payment of the claim, and threaten to and will pay it; that plaintiffs have protested the payment of the claim, and demanded that it be itemized and that a record be made to show just what field expenses were incurred by said county agent, all of which has been refused, and for that purpose defendants are acting in collusion with the farm bureau of Weber county and the officers of the Agricultural College for the sole and only purpose of defrauding Weber county out of said funds; that they will not bring any action to recover said funds if paid; that heretofore said officers, over plaintiff's protests, have paid similar

unlawful claims, and have refused to bring any action to recover such expenditures or to stop further payments on said contract, and that plaintiffs have no plain, speedy, or adequate remedy at law, etc.; that the Weber county farm bureau contains numerous residents of other counties as members thereof, which said nonresident members demand of and have received the services of the said county agent of Weber county; that plaintiffs, prior to the making of said contract, protested the same, and requested a hearing before the county commissioners, which was refused, and that "the said board of county commissioners secretly, without any hearing or evidence whatever, entered into said contract, and voted to allow and make the appropriation hereinbefore alleged, and that the entire scheme of paying said money and issuing said warrant referred to in these pleadings is not the allowance of any claim against the county, but is simply an attempt to unlawfully, in the manner aforesaid, appropriate the funds of said county to private schemes and parties as aforesaid."

The principal contention of the appellants is that the statute (Comp. Laws Utah 1917, § 5292) authorizing the county commissioners to enter into the contract and to provide funds for the purpose is in effect authorizing the appropriation of public funds for private use, and is in violation of article 6, § 31, of the state Constitution, which provides that—

"The Legislature shall not authorize * * * any county * * * to lend its credit or subscribe to stock or bonds in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking."

This contention rests upon the premise that the purpose for which the appropriation is authorized to be made is a "private individual or corporate enterprise or undertaking." If the appropriation of county funds authorized is for a public purpose, the statute is clearly not prohibited by the Constitution. The nature of the business is defined by the act of Congress (U. S. Comp. St. § 8877 b) referred to in the contract as follows:

"That co-operative agricultural extension work shall consist of the giving of instruction and practical demonstrations in agriculture and home economics to persons not attending or resident in said colleges in the several communities, and imparting to such persons information on said subjects through field demonstrations, publications, and otherwise; and this work shall be carried on in such manner as may be mutually agreed upon by the Secretary of Agriculture and the state agricultural college or colleges receiving the benefits of this act."

The sections of the statute (Comp. Laws Utah 1917, §§ 5290-5296) referred to in the contract are as follows:

"5290. The board of trustees of the Utah Agricultural College are hereby authorized and directed to place practical farm and home demonstrators in various parts of the state of Utah.

"5291. Such demonstrators shall study comprehensively the existing farm and home conditions within the districts assigned. They shall visit as far as possible from farm to farm and from home to home and shall present such facts and principles and practices of modern agricultural and home science as may seem needed in the development of the districts assigned. They may assist in the introduction of new crops, new methods of cultivation, and new machinery; encouraging boys' and girls' farm and home contests; in organizing cow-testing and similar organizations; in advancing county and local fairs, and in promoting in such other ways as may be decided upon, the argicultural and home interests of the districts to which the demonstrators are assigned.

"5292. The board of trustees of the Utah Agricultural College are hereby authorized to enter into co-operative contracts with the United States department of agriculture, county or city, officers, private and public organizations, or individuals, whereby the expense connected with the demonstration work authorized by §§ 5290-5296 may be borne jointly by the state of Utah and by any or all of the agencies above mentioned in this section. The county commissioners of each county in this state are hereby authorized and empowered to provide funds in an amount sufficient to meet the purposes of said law in their respective counties, but not exceeding in any one year the sum of $2,500; provided, that all of said amount shall be expended for field work."

Sections 5293-5296 provide that not more than one demonstrator in each branch shall be placed in any one county, require each demonstrator to do at least nine calendar months actual field work, and to keep a record of his work and observations, which shall be filed, etc.; that the board of trustees of the Agricultural College shall

make a biennial report to the Governor, and appropriate funds from the state treasury to carry into effect the provisions of the law.

The system of agricultural extension work thus defined has no feature of private enterprise, but is of a public and general character, designed and intended for the public welfare. It is a branch of popular education for the benefit of those not reached by schools and colleges, and is not only a lawful but a most commendable purpose for which public funds may be expended. *State* v. *Miller,* 104 Neb. 838, 178 N. W. 846.

The case of *Harrington* v. *Atteberry,* 21 N. M. 50, 153 P. 1041, cited and relied upon by appellants, is not in conflict with, but rather supports, the views above expressed. In the case cited the appropriation of county funds to a private corporation conducting a county fair was enjoined because of a constitutional provision of that state that "no appropriation shall be made for charitable, educational or other benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state." The majority opinion held the appropriation was for a public educational purpose and a public benefit, but that the appropriation could not be made to the corporation conducting the fair because it was not under the control of the state. There is no such provision in the Utah Constitution.

Appellants have further suggested that the statute in question is invalid because by it the Legislature imposes taxes for county purposes in violation of Const. art. 13, § 5, and refer to *State* v. *Standford,* 24 Utah, 148, 66 P. 1061, where the constitutional provision was applied. This claim is wholly insupportable because the statute in question does not impose any obligation whatever upon the county. The county is merely given legal power to enter into the contract and provide the funds or not, as its duly constituted officers may elect. There is no imposition of taxes, direct or indirect, by legislative authority upon the county, and no interference with local self-government by the county.

The statute in question is not in conflict with the Constitu-

tion, and its validity must be and is sustained. Statutes of other states upon this subject, and open to         2
much graver constitutional objections, have been sustained. *State ex rel.* v. *Meeker*, 182 Ind. 240, 105 N. E. 906;
*State* v. *Ireland*, 91 W. Va. 435, 113 S. E. 652; *State* v.
*Miller*, 104 Neb. 838, 178 N. W. 846.

It is further contended that the county commissioners exceeded their legal power in allowing the claim in question,
for the reason that the contract, out of which the claim arose,
had not been fully complied with or performed, and the
claim presented to the county had not been itemized. The
allegations of the complaint in this respect are quite indirect,
indefinite, and unsatisfactory, but, assuming that sufficient
is alleged to raise an issue of fact upon the performance of
the contract, and that the claim was irregularly presented,
no case is stated for an injunction. There is no authority of
law in this state for an appeal in behalf of the county
from the action of a board of county commissioners in         3, 4
allowing a claim against the county. In the audit and
allowance of claims against the county, the board of county
commissioners exercises judicial functions (*Salt Lake County*
v. *Clinton*, 39 Utah, 462, 117 P.. 1075) ; and its determinations upon questions of fact, in the absence of fraud or corruption, are final and conclusive upon the county. Of course,
if the claim is of such a nature that it is not a legal county
charge, its payment would be properly prevented by judicial
intervention. But such is not the case here. As we have
seen, the claim was of a kind authorized by law. In
short, the payment of a claim against a county, which         5
has been allowed, will not be enjoined, unless the claim
is of such a character as not to be a legal county charge, or
its allowance fraudulent or corrupt. Mere irregularities in
its presentation or allowance, or the erroneous decision of
questions of fact upon which it rests, are not grounds for
judicial interference.

The judgment is affirmed, with costs.

GIDEON, C. J., and THURMAN, FRICK, and STRAUP,
JJ., concur.