PAUL L. LINGAMFELTER, *et al.*

*v.*

MALCOLM M. BROWN, *et al.*

(CC 747)

Submitted January 12, 1949. Decided March 15, 1949.

*Spilman, Thomas & Battle* and *Robert S. Spilman,* and *J. O. Henson,* for plaintiffs.

*Ira J. Partlow, Attorney General, Jackson, Kelly, Morrison & Moxley, Thomas B. Jackson* and *John C. Morrison,* for defendants.

LOVINS, JUDGE:

This suit, commenced in the Circuit Court of Kanawha County, challenges the validity of Chapter 5, Acts of the Legislature, 1947, Regular Session, providing for the organization, powers and duties of the West Virginia State Apple Commission, and levying a tax on commercial apples in excess of five hundred bushels, grown in West Virginia and "moved into the channels of commerce."

Paul L. Lingamfelter, Laila M. Lingamfelter, L. W. DeHaven, James L. Dillon, Charles Shade, J. Howard Brown, Claude LeDane, Max Miller, Charles Collis, George D. Daniels, Mrs. W. B. Lingamfelter, Martin Shade, Charles Lewis, Cecil DeHaven, Lester Hess, Ray Manor, Edward Basore, Claude Newkirk, W. K. Ellis, Jack Catrow, C. D. Catrow, O. H. Cushwa, Marvin Ellis, Frank J. Trammell, G. A. Donaldson, Milton Porterfield, L. F. Landis and H. H. Smith, who sue on behalf of themselves and of all others similarly situated and hereinafter referred to as "plaintiffs", are the owners of apple orchards aggregating 1,782 acres, from which were produced in the year 1947 approximately 342,500 bushels of apples. The defendants herein are Malcolm M. Brown, J. Howard Rannels, Fred C. Matson, J. Burns Huyett, Sam M. Skinner, Henry W. Miller, Jr., and Edward S. Knight, all of whom are members of and constitute the West Virginia State Apple Commission, hereinafter referred to as "commission", and Ira J. Partlow, Attorney General of the State of West Virginia. Defendants demurred to the plaintiffs' bill of complaint, and the trial court, having sustained said demurrer, on its own motion certified such ruling to this Court.

Chapter 5, Acts of the Legislature, Regular Session, 1947, was enacted February 24, 1947, effective from passage, and shall be designated herein "statute". The title of the statute is as follows: "AN ACT to amend chapter nineteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by adding thereto a new article to be numbered article twelve-a, relating to apples; to create the West Virginia state apple commission and to prescribe its powers and duties; to promote the sale and consumption of West Virginia applies by providing for campaigns of education, advertising, publicity, sales promotion and research; to levy an excise tax on apples entering the channels of commerce, to provide for its collection, and to appropriate the revenue derived from it; and to provide penalties for violations of this act."

Section 1 defines a phrase and certain words contained in the statute. Section 2 creates the West Virginia State Apple Commission; prescribes the qualifications of its seven members who are to be appointed by the Governor from a list of fourteen eligible growers of apples supplied to him by the West Virginia State Horticultural Society; fixes the term of each member of the commission; and provides for the election of a chairman and the payment of expenses and per diem allowances from the apple merchandising fund created by the statute.

Section 3 prescribes the duties of the commission and provides that "all funds levied and collected" shall be administered by the commission. The commission is required "to plan and conduct campaigns of education, advertising, publicity, sales promotion, and consumption of West Virginia apples"; is authorized to make contracts and expend the apple merchandising fund; and to "do whatever else may be necessary to effectuate the purposes of" the statute. Section 3 also authorizes the commission to cooperate with other state and federal agencies and with agricultural and horticultural organizations in research "on production, packaging and marketing, advertising, publicity, education and other means of promoting the sale and use of

apples, and to expend moneys of the apple merchandising fund for such purposes"; and to appoint a secretary and other employees and fix their salaries.

Section 4 levies a tax of one cent per bushel on "all commercial apples grown in West Virginia and moved into the channels of commerce," exempting therefrom the first five hundred bushels of apples sold in any one crop season.

Section 5 requires reports to be made to the commission by the growers of commercial apples. Section 6 provides for the time and manner of payment of the tax levied by Section 4. Section 7 requires the grower of commercial apples to keep a record of the apples sold by him. Section 8 provides for the collection of the tax, with interest thereon; authorizes the recovery of unpaid taxes by a civil action in the name of the State of West Virginia; and requires the attorney general to institute such actions, in the proper court at the request of the commission.

Section 9 creates the "apple merchandising fund", and provides that all moneys credited to such fund be appropriated by the Legislature for the purposes set forth in the statute. Section 9 also provides that the money be credited on the state treasurer's books and be used "exclusively for the administration and enforcement, * * * including the collection of taxes, the payment of personal services and expenses of employees and agents of the commission and the payment of rent, service, materials and supplies necessary to effectuate the purposes and objects" of the statute. Section 9 further provides that any unexpended balance of the apple merchandising fund remaining at the end of each biennium should not be transferred to the general fund of the state treasury.

Section 10 requires that warrants be drawn for the expenditures made by the commission. Section 11 provides that any false report made by a grower of the quantity of apples sold by him in any period shall be a misdemeanor.

Section 12 requires all state and county law-enforcement officers to assist in the enforcement of the statute.

The last section of the statute, Section 13, is as follows: "If any clause, sentence or section of this article shall for any reason be adjudged by a court of competent jurisdiction to be invalid, such adjudication shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence or section of this article directly involved in the controversy in which said adjudication shall have taken place."

The plaintiffs' bill of complaint, having set forth the enactment of the statute and the substance of its provisions, alleges that the defendants, except the defendant Partlow, have been appointed from a list furnished the Governor of this State in accordance with the provisions of the statute; that the persons so appointed are now performing the duties of said commission and exercising the powers conferred on it by the statute; that, on or about the 1st day of December, 1947, the commission demanded that the plaintiffs and other growers of commercial apples make the reports required by the statute on the forms prescribed by the commission covering the 1947 harvest; and that the commission demanded the growers of commercial apples to pay one-half of the tax levied by the statute on or before January 14, 1948, the residue of the tax to be paid on or before June 30, 1948.

It is alleged that plaintiffs refused to make the reports or pay the tax, or any part thereof, and so notified the commission; that the commission, on or about March 24, 1948, advised plaintiffs that actions at law would be instituted to enforce payment of these taxes; and that the Attorney General of the State of West Virginia, having been informed of plaintiffs' refusal to pay the tax levied by the statute, has indicated that he intends to enforce the payment of such taxes by appropriate actions at law brought against the individual plaintiffs.

The commission was appointed from a list furnished by the West Virginia State Horticultural Society, and all members of said commission are either officers or members of said society, which is a private, nonstock corporation, organized under the laws of this State.

The bill of complaint further alleges that various provisions have been made by other statutes for instruction in the art of handling, advertising, and selling apples, and the Extension Division of the College of Agriculture of West Virginia University is vested with authority to give instructions and demonstrations of the best methods of growing and handling apples.

Plaintiffs aver that agriculture in all of its branches, is not one of the principal industries or commercial undertakings of the people of the State, who are primarily engaged in mining and manufacturing; that the amount of money derived from growing and selling apples is small when compared with the amounts derived from other industrial and commercial enterprises; that the business of raising and selling apples is a "private business for private profit"; and that the benefit to the public is incidental.

The plaintiffs allege that the members of the apple commission have no authority for the reason that they were appointed from a list of fourteen persons which was furnished the Governor by the West Virginia State Horticultural Society, and for the further reason that the appointments of the seven members of the commission, having been made after adjournment of the regular session of the 1947 Legislature, should have been submitted to the Extraordinary Session of the 1947 Legislature, which was convened after the appointment of the members of the said commission.

It is alleged that unless restrained by injunctive process actions at law will be instituted to collect the tax, and plaintiffs have no adequate remedy at law to prevent a multiplicity of actions.

Plaintiffs challenge the statute as being null and void, for the reason that the tax provided for therein is levied for a private purpose; that the levy of such tax is in violation of Sections 9 and 10, Article III of the Constitution of West Virginia, and Section 1 of the Fourteenth Amendment to the Constitution of the United States, as depriving these plaintiffs and other persons similarly situated of property without due process of law; that the statute is special legislation in violation of Section 39 of Article VI of the Constitution of this State; that the tax imposes a burden on interstate commerce; that the tax is not equal and uniform, and is in violation of Section 1 of Article X of the Constitution of this State, and Section 1 of the Fourteenth Amendment to the Federal Constitution; that the statute is illegal and void for the reason that it delegates to the West Virginia State Horticultural Society the selection and appointment of the commission, which, having the power to levy and collect the tax and administer a public fund, should be appointed by a public officer.

The bill prays that the court decree that the statute is unconstitutional and void; that the members of the commission be inhibited and restrained from commencing any actions at law, suits in equity, or any proceedings in any court for the purpose of collecting the tax levied by the statute and now unpaid; that the commission be restrained from expending any moneys collected by them under the provisions of said statute, and from issuing or procuring the issuance of warrants; and for general relief.

The trial court, having sustained the demurrer as above stated, certified six questions to this Court for decision. The controlling question certified is, in substance, as follows: Is the tax authorized by the statute for a private or public purpose, and does it violate the Federal and State Constitutions? It is unnecessary to state or discuss the other five questions certified since the one question above stated, as will be shown hereinafter, fully disposes of this litigation.

It is well settled that this Court "will not pass upon the constitutionality of a statute, unless a decision upon that very point is necessary to the determination of the case." *Edgell v. Conaway,* 24 W. Va. 747. See *Norris v. County Court,* 111 W. Va. 692, 163 S. E. 418; *Bates v. State Bridge Com.,* 109 W. Va. 186, 153 S. E. 305; *State ex rel. Cosner v. See,* 129 W. Va. 722, 42 S. E. 2d 31. A statute is presumed to be in accordance with the provisions of the Constitution until the contrary is shown. In this case, the constitutionality of the statute is controlling and a determination of that issue will dispose of this litigation.

The power of taxation is an inherent attribute of sovereignty, and, in this jurisdiction, the Legislature possesses such power, which is limited generally by the Constitution of this State or the Federal Constitution. *Road Commission v. County Court,* 112 W. Va. 98, 163 S. E. 815; *State v. Page,* 100 W. Va. 166, 130 S. E. 426. See *Fox v. Standard Oil Co. of New Jersey,* 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333.

No express provision will be found in the Constitution with reference to the power of the Legislature to levy a tax and appropriate the proceeds thereof for private purposes. Nevertheless, there are certain principles which are implicit in our form of government, which the Legislature must recognize and obey; one of such principles is that a tax may be levied only for a public purpose. *Woodall v. Darst,* 71 W. Va. 350, 354, 77 S. E. 264.

A question relating to the taking of private property for private use under the power of eminent domain was discussed by this Court in the cases of *Varner v. Martin,* 21 W. Va. 534, and *Hench v. Pritt,* 62 W. Va. 270, 57 S. E. 808. Although some differences exist as to the exercise of the power of eminent domain and the exercise of the power of taxation, the term "public purposes" is used in the same sense as a prerequisite to the exercise of both powers. 1 Cooley Taxation, 4th ed., Section 176. The Legislature under its general grant of power cannot, in the exercise of

the power of eminent domain or the power of taxation, take private property, without the owner's consent, for private purposes. *Cole v. City of La Grange,* 113 U. S. 1, 28 L. ed. 896, 5 S. Ct. 416.

In *Varner v. Martin, supra,* this Court, speaking by Judge Green, said: "In the first place all the authorities concur in holding, that private property can never be taken without the consent of the owner for a private use only, either with or without compensation. It is true there is neither in our Constitution nor in the Constitution of the other States any express provision forbidding that private property should be taken for the private use of another, or any constitutional provision forbidding the Legislature to pass laws, whereby the private property of one citizen may be taken and transferred to another for his private use, without the consent of the owner. It was doubtless regarded as unnecessary to insert such a provision in the Constitution or bill of rights, as the exercise of such an arbitrary power of transferring by legislation the property of one person to another, without his consent, was contrary to the fundamental principles of every republican government; and in a republican government neither the legislative, executive nor judicial department can possess unlimited power. Such a power as that of taking the property of one and transferring to another for his own use, is not in its nature legislative, and it is only legislative power, which the Constitution has conferred on the Legislature. Such an act if passed by the Legislature would not in its nature be a law, but would really be an act of robbery; the exercise of an arbitrary power not conferred on the Legislature." See Limitations of the Taxing Power, Gray, Section 169; 1 Cooley on Taxation, 4th ed., Section 174 *et seq.; Parkersburg v. Brown,* 106 U.S. 487, 27 L. ed. 238, 1 S. Ct. 442; Opinions of the Justices, 58 Me. 590; *National Bank v. City of Iola,* 9 Kan. 689; *The People v. The Town of Salem* (Mich.), 4 Am. Rep. 400, 405; *Weismer v. The Village of Douglas* (N.Y.), 21 Am. Rep. 586; *People v. Parks,* 58 Cal. 624; *Lowell v. City of Boston* (Mass.), 15 Am. Rep. 39, 45; *State v. Williams* (Nev.), 185 P. 459;

*State v. Dickson* (Mont.), 213 P. 227; *Nash v. Town of Tarboro* (N.C.), 42 S.E. 2d 209; *Savings and Loan Assoc. v. Topeka,* 87 U. S. 655, 22 L. ed. 455; *State v. Clausen* (Wash.), 188 P. 538; *Cole v. City of La Grange, supra.*

We find no substantial deviation from the rule that taxes must be levied for a public purpose. It is, therefore, incumbent on this Court to determine whether the tax levied by Section 4 of the statute is levied for a public or private purpose, such determination being a judicial and not a legislative function. *State v. Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 817; *Woodall v. Darst, supra.*

A public purpose may be said to be synonymous with governmental purpose. In discussing the question of what is a public purpose, Judge Cooley, in *The People v. The Town of Salem, supra, said;* "We perceive, therefore, that the term 'public purpose', as employed to denote the objects for which taxes may be levied, has no relation to the urgency of the public need, or to the extent of the public benefit which is to follow. It is, on the other hand, merely *a term of classification, to distinguish the objects for which, according to settled usage, the government is to provide, from those which, by like usage, are left to private inclination, interest or liberality.*" (Author's emphasis.)

But we do not think that a comprehensive definition of a private or a public purpose is necessary in this case. Nor do we think that a satisfactory definition of general application can be made, since the determination of that question depends on the facts of each case. *State v. Clausen, supra.* In resolving the question as to whether the tax levied by the statute is private or public, we resort to the provisions of the statute as showing the legislative intent and purpose. The purpose of the statute, as disclosed by Section 3, is for the benefit of growers of commercial apples who are engaged in a private business undertaking. Any money derived from the tax must be expended for the purposes set forth in the statute; nor may any unexpended

balance be transferred to the general fund of the state treasury.

The vice of expending public money for the benefit of private business is readily seen when it is considered that numerous business undertakings such as the manufacture of steel, or lumber, the production of coal, oil, gas and other industrial and commercial enterprises could be taxed for the same purposes, as could the business of moving apples into the "channels of commerce."

In the case of *Michigan Sugar Co. v. Dix* (Mich.), 83 N.W. 625, 56 L.R.A. 329, a statute was condemned as being unconstitutional which provided for the payment of bounties to the manufacturers of sugar from beets grown in the State of Michigan. In *Deal v. Mississippi* (Mo.), 18 S.W. 24, the Court considered a statute providing for payments to be made to any person planting certain trees in the manner provided by the statute. The Court there held the statute unconstitutional as being a grant of public funds for a private purpose. In *William Deering & Co. v. Peterson* (Minn.), 77 N.W. 568, the Court held a statute unconstitutional which provided for loans to farmers for the purchase of seed and grain.

In *State v. Clausen, supra,* and *Cobb v. Parnell* (Ark.), 36 S.W. 2d 388, statutes were upheld as providing funds for public purposes. It is proper to say that the Court in *Cobb v. Parnell, supra,* grounded the decision upon an emergency existing in the State of Arkansas which resulted from the effects of a wide-spread drought in that state during the year 1930. And it should be noted in *Stuttgart Rice Mill Co. v. Crandall* (Ark.), 157 S.W. 2d 203, that the court held unconstitutional a statute imposing a tax of two cents per hundred pounds on all rice milled within the state to be paid to the rice development commission. The *Stuttgart Rice Mill Co.* case was clearly distinguished from the *Parnell* case.

The case of *C. V. Floyd Fruit Co. v. Florida Citrus Commission* (Fla.), 175 So. 248, is cited by the defendants as

upholding the constitutionality of the statute. In the *Floyd* case it was held that a tax on citrus fruit grown in the State of Florida and turned into the channels of trade, to be used for advertising citrus fruits, was levied for a public purpose. Such holding is based on the fact that the "* * * citrus industry of Florida is one of its greatest assets. Its promotion and protection is of the greatest value to the state, and its advancement redounds greatly to the general welfare of the commonwealth."

Defendants likewise rely upon the case of *Miller v. Michigan State Apple Commission* (Mich.), 296 N.W. 245. In the *Miller* case the Court considered an act similar to the statute here considered. Following the reasoning in *C. V. Floyd Fruit Co. v. Florida Citrus Commission, supra,* the Court held the enactment of the statute to be a valid exercise of legislative power, and distinguished the case of *Michigan Sugar Co. v. Dix, supra,* on the ground that in the *Michigan Sugar Co.* case the money raised by taxation was paid directly to the manufacturers of sugar from beets grown in the State of Michigan.

In the case of *State v. Enking,* (Ida.) 82 P. 2d 649, the Court characterized the case of *C. V. Floyd Fruit Co. v. Florida Citrus Commission, supra,* as being persuasive authority, and held that it was within the competency of the Legislature of Idaho to find that the fruit and vegetable production considered in that case was of public interest, and that the act was designed to promote the general welfare of that state.

The case of *Louisiana State Department of Agriculture v. Sibille* (La.), 22 So. 2d 202, is cited in support of defendants' contentions. In the *Sibille* case the Court had under consideration a statute levying a tax on sweet potatoes shipped in the State, the tax being for the purpose of advertising and promoting the increased consumption of sweet potatoes. It was there held that the tax was "for a public purpose, since it redounds to the public welfare by promoting the growth of an important agricultural industry."

We are not persuaded that the reasoning of the cases of *C. V. Floyd Fruit Co. v. Florida Citrus Commission, supra; Michigan Sugar Co. v. Dix, supra; State v. Enking, supra,* and *Louisiana State Department of Agriculture v. Sibille, supra,* should be applied in this case. The principal reason for this conclusion is that the growing and moving of commercial apples in the State of West Virginia is not an enterprise or undertaking of such size as to impress it with a public interest. True, the growing of apples and the shipping of them into "channels of commerce" is an important undertaking to the persons engaged in that business. Furthermore, it may be said that the undertaking or enterprise is important to the parts of the State where a considerable portion of the land is devoted to the growing of apples. But when appraised from the standpoint of the entire State the monetary returns from such business are, more or less, insignificant and are not sufficient to characterize that business as one of the principal commercial or agricultural enterprises of the State of West Virginia.

Our attention has been directed to the cases of *Hutchinson v. County Court,* 100 W.Va. 461, 130 S.E. 654, and State v. Ireland, 91 W.Va. 435, 113 S.E. 652. In those cases the county courts of the counties involved were required to pay one-half of the county agents' salaries in accordance with a statutory requirement, the other one-half of such salaries being paid by the Extension Division of the College of Agriculture of West Virginia University. As expressed by Judge Meredith in *State v. Ireland, supra:* "They [farmers] are progressive; by their co-operation the educational advantages of the university are brought to the farm and farm home. In this way those who can not go to the university have the university brought to them." Statutes similar to that considered in the *Ireland* and *Hutchinson* cases have been upheld in other jurisdictions. See *State v. Kerns* (Ohio), 136 N.E. 217; *Cloud County Farm Bureau v. Board of Com'rs.* (Kan.), 268 P. 91; *State v. Miller* (Neb.), 178 N.W. 846; *Hendrickson v. Taylor County Farm Bureau* (Ky.), 244 S.W. 82. The *Ireland* and *Hutchinson* cases were decided on the theory that the money was being expended for public education in

an important, if not indispensable, undertaking, i.e., agriculture.

We find nothing in this record showing or indicating any emergency in connection with the business of growing apples, and, as has been stated, we think the growing of commercial apples occupies such an unimportant position in the economy of this State that it may be said that business is charged with a public interest. Of course, the prosperity of the apple growing industry will result in incidental benefit to the public, but the benefit must be direct and free from doubt. We hold that the tax levied by Section 4 of the statute is levied for a private purpose, and is unconstitutional.

We now come to the question whether the elimination of the taxing provision of the statute renders the entire statute void. Section 13, hereinabove quoted, raises the presumption that the Legislature intended the Court to consider and apply the separate provisions of the statute rather than consider the entire statute. Section 13 is an "aid in determining the legislative intent." *Hodges v. Pub. Ser. Com.,* 110 W.Va. 649, 656, 159 S.E. 834; *Carter v. Carter Coal Co.,* 298 U. S. 238, 80 L.ed. 1160, 56 S. Ct. 855, 873. In the case of *Loeb v. Trustees of Columbia Township,* 179 U.S. 472, 45 L.ed. 280, 21 S. Ct. 174, the applicable rule is stated as follows: "One part [of a statute] may stand, while another will fall, unless the two are so connected, or dependent on each other in subject matter, meaning, or purpose, that the good cannot remain without the bad. The point is not whether the parts are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance, — whether the provisions are so interdependent that one cannot operate without the other." See *Shulman Co. v. Sawyer* (Va.), 189 S.E. 344; 11 Am. Jur., Constitutional Law, Section 156; 6 R.C.L., Constitutional Law, Section 121. If the other parts of a statute are not dependent upon the void part, the valid portions of the statute may remain in force. *County Court v. Painter,*

123 W.Va. 415, 15 S.E. 2d 396; *Berea College v. Kentucky,* 211 U.S. 45, 53 L.ed. 81, 29 S. Ct. 33.

When that part of the statute relating to the tax is held void, the remaining sections and parts of the statute are deprived of any force and vitality. How can the purposes and intent of the Legislature be carried out if no money may be raised by taxation? Moreover, the purposes provided for in the statute are private and, in our opinion, beyond the scope of State Government. Thus appropriations for those purposes are similarly void. The entire statute must fail.

What has been said renders it unnecessary to discuss and answer the other certified questions. The statute being unconstitutional in its entirety, no question remains as to whether the tax is a burden on interstate commerce, or whether the commission has been properly appointed or has any power. Therefore, we express no opinion as to the other five questions certified.

Accordingly, the ruling of the Circuit Court of Kanawha County is reversed.

*Reversed.*