AMERICAN BARGE LINE COMPANY, *et al.*

*v.*

C. H. KOONTZ, *Individually and as State Tax Commissioner of West Virginia*

(CC 784)

Submitted October 3, 1951. Decided December 20, 1951.

*William M. Drennen, Robert G. Kelly, Herman A. Bayless, Charles M. Spence,* for plaintiffs.

*William C. Marland,* Attorney General, *Joseph E. Hodgson,* Assistant Attorney General, *King S. Kearns,* for defendant.

LOVINS, JUDGE:

This is a proceeding seeking a declaratory judgment whether a tax on the privilege of transporting freight and passengers by water is a valid and lawful exaction under the taxing power of the State of West Virginia. The tax is ostensibly authorized by Section 3, Article 12A, Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933, as amended by Section 5-a, Article 12A, Chapter 108, Acts of the Legislature, 1937, Regular Session, other amendments to the act having expired by their own terms. The above mentioned statute will be hereinafter designated with appropriate section number as Code, 11-12A, as amended.

American Barge Line Company, a corporation, and Mississippi Valley Barge Line Company, a corporation, filed their joint petition in the Circuit Court of Kanawha County against C. H. Koontz, individually and as tax commissioner of the State of West Virginia, under the Uniform Declaratory Judgments Act (Chapter 26, Acts of the Legislature, 1941, Regular Session) and rules of practice and procedure in courts of record in the State of West Virginia, adopted by this Court on the tenth day of February, 1947, 128 W. Va. XV.

The American Barge Line Company is incorporated in

the State of Delaware and has its principal office at Wilmington in that state, with other offices and officers located and stationed at Jefferson, Indiana, Cincinnati, Ohio, and Pittsburgh, Pennsylvania. The plaintiff Mississippi Valley Barge Line Company is a Delaware corporation, having its principal office at Saint Louis, Missouri. They will be hereinafter referred to collectively as "plaintiffs". The defendant in his individual and official capacity will be hereinafter designated "defendant".

Plaintiffs have no office or place of business located in West Virginia, nor any employee stationed therein. They are common carriers and hold certificates of convenience and necessity from the Interstate Commerce Commission of the United States. The vessels which they use in their business are licensed by the Federal Government and their use on navigable waters is subject to applicable laws and regulations of the Federal Government.

The plaintiffs use vessels and barges, operating them upon the Ohio and Mississippi Rivers and upon the navigable tributaries of those rivers, including the Kanawha and Monongahela Rivers. They transport freight of three classes, namely: (a) freight originating at one point in West Virginia and destined to another point in the State of West Virginia, hereinafter referred to as "intrastate traffic"; (b) freight originating outside of the State of West Virginia and destined to a point within the state, or shipments originating in the State of West Virginia and destined to a point outside the state, hereinafter referred to as "one-point interstate traffic"; and (c) freight originating at points outside the State of West Virginia and destined to a point outside the state, hereinafter designated as "through traffic".

Plaintiffs do not devote any of their facilities exclusively to intrastate traffic, such traffic being handled along with interstate traffic. That portion of plaintiffs' business in navigating the Monongahela and Kanawha Rivers consists in transporting one-point traffic and intrastate traffic, the greater portion of the business of plaintiffs consisting of transporting through traffic. There

is no facility furnished by the State of West Virginia, nor is any county or municipality therein used by the plaintiffs in the conduct of their business.

The Ohio, Kanawha, and Monongahela Rivers are navigable streams which have been improved by the Government of the United States and under its authority.

The plaintiffs are licensed by the Government of the United States which authorizes and licenses the plaintiffs' vessels to operate. In addition thereto, the plaintiffs have been granted certificates of convenience and necessity by the Interstate Commerce Commission, as above stated. Incidental to the business of plaintiffs, they collect and pay transportation taxes to the Federal Government and are subject to regulation by the various agencies of that government authorized by law to supervise their activities on the navigable rivers above mentioned. The petition of the plaintiffs admits in substance that the bed, banks, and shores of that portion of the Ohio River bordering on the territory of the State of West Virginia are within the limits of such state. But it is further alleged that since the Ohio River has been improved by locks and dams, the navigable waters of the Ohio River overlie a portion of the State of Ohio, and that the territorial limit of the State of West Virginia only extends to the low water mark of the Ohio River as determined prior to canalization of that river. Plaintiffs allege that after the canalization of the Ohio River, in using the Ohio River for the purpose of navigation, the vessels and barges of the plaintiffs navigate waters of the Ohio River overlying the territory of the State of Ohio.

Plaintiffs invoke Article 4 of "An Ordinance for the Government of the Territory of the United States Northwest of the River Ohio", providing for the freedom of navigation of the navigable waters leading into the Mississippi and Saint Lawrence Rivers; the Virginia Compact, adopted December 18, 1789 (Hening's Virginia Statutes, Vol. 13, Page 17), approved by the Act of Congress of February 4, 1791, 1 Stat. 189, as forbidding the exaction of the tax here considered.

Plaintiffs aver that their business competes with other persons and other means of transportation.

The defendant, on or about November 22, 1950, demanded that plaintiffs file tax returns and pay transportation tax for the years 1947, 1948 and 1949. The returns so demanded were filed, the pertinent portions of which being as follows:

### AMERICAN BARGE LINE COMPANY

| | 1947 | 1948 | 1949 |
|---|---|---|---|
| Gross income W. Va. two-point traffic | $ 51,756.98 | $ 59,570.54 | $ 17,779.82 |
| Pro-rated gross income from through traffic and W. Va. one-point traffic | $330,105.30 | $874,322.41 | $599,747.88 |
| (Total tax that would be produced by statutory formula) | $ 11,124.48 | $ 27,276.63 | $ 18,017.69 |

### MISSISSIPPI VALLEY BARGE LINE COMPANY

| | 1947 | 1948 | 1949 |
|---|---|---|---|
| Gross income W. Va. two-point traffic | $ 24,023.79 | $ 28,683.85 | $ 54,852.83 |
| Pro-rated gross income from through traffic and W. Va. one-point traffic | $554,363.34 | $635,570.21 | $671,457.59 |
| (Total tax that would be produced by statutory formula) | $ 16,872.81 | $ 19,384.43 | $ 21,199.58 |

Liability for any of the taxes demanded by the defendant was denied. The amount claimed by the defendant for transportation of intrastate traffic, however, was tendered by plaintiffs without prejudice to their rights. The defendant returned the payments so made and as-

serted a claim for payment of taxes on gross income derived from all intrastate traffic for ten years, with penalties. The letter in which such demand was made indicates that the defendant insists upon payment of taxes on one-point intrastate traffic and through traffic, apportioned as required by the statute. Plaintiffs deny that there is any lawful right on the part of the defendant to assess a privilege tax upon the business in which they are engaged, and assign several reasons in support of their position.

This suit is brought to determine and declare the interpretation and application of the following statute:

"Sec. 3. Every person or corporation operating a steamboat, steamship or other floating property for the transportation of passengers or freight; and doing business within the state shall pay to the state an annual privilege tax for each calendar year. The tax shall be two and one-half per cent of the gross income from business beginning and ending entirely within the state and a like percentage of its remaining gross income earned within the state, to be determined as follows:

"Ascertain the total gross income from all business not confined to this state which begins, ends or passes through the state and determine both the total ton-miles of freight so hauled and the ton-miles of such business actually done within the limits of this state. The tax shall be assessed against a sum bearing the proportion to the amount of gross income so determined that the ton-miles of such business done in this state bear to the total ton-miles of such business. This tax shall be in addition to all other license taxes or charges to which such taxpayers are subject under the law of this state, and shall be measured in terms of gross income for the year ending December thirty-first preceding." Section 3, Article XII-A, Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933.

"Section 5-a. *Surtaxes*. Every person taxable under sections two, three, four or five of this article shall pay,

in addition to that tax and all other taxes, an additional surtax of three-tenths of the tax imposed by such sections." Article 12-a, Chapter 108, Acts of the Legislature, 1937, Regular Session.

Plaintiffs conclude with a prayer that a judgment be entered decreeing the rights, duties and obligations of the parties to this litigation and that the Court retain jurisdiction of this proceeding in order that the plaintiffs may have such other and further relief as may be deemed proper.

The trial court overruled the demurrer to the petition of plaintiffs, as above stated, and certified six questions, substantially as follows:

1. May the tax be imposed upon the plaintiffs for the privilege of operating boats upon the Ohio River and its tributaries in view of the exercise of federal power to regulate and license such operations?

2. Would the imposition of the tax violate the Northwest Ordinance of 1787 and the Virginia Compact, or either of them?

3. Is the tax prohibited by Article I, Section 8 of the Constitution of the United States as (a) a direct tax on interstate commerce, (b) an unreasonable burden on interstate commerce, or (c) a tax on the privilege of carrying on an exclusively interstate business?

4. Would the imposition of the tax on the activities of the plaintiff deny to them due process of law?

5. Are the plaintiffs doing business within the state in such manner as to subject them to liability for payment of the tax?

6. Is the tax inapplicable to the activities of the plaintiffs because (a) it would not be commensurate with any benefits received by the plaintiffs, or (b) is not capable of being accurately applied to the activities of the plaintiffs?

Notwithstanding the foregoing specific questions certified by the trial court, this case presents the underlying, basic and oft recurring question whether a state has entered a field of taxation committed exclusively to the government of the United States of America. From an examination of various cases dealing with situations similar to that presented by this record, one fact stands out—that the line of demarcation between the powers of two sovereignties, i. e., United States of America and a state, as related to taxation—is not clearly drawn by statute or judicial decision.

Decisions of the Supreme Court of the United States have upheld state imposed ad valorem taxes levied on property used in interstate and foreign commerce. Illustrative: An ad valorem tax on ocean going ships having no situs other than the domicile of the owner. *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63, 32 S. Ct. 13, 56 L. ed. 96. An ad valorem tax on vessels used as a connecting link in transportation of interstate and foreign commerce. *Old Dominion Steamship Co.* v. *Virginia*, 198 U. S. 299, 25 S. Ct. 686, 49 L. ed. 1059. The authority of a state to tax that portion of a bridge across the Ohio River within its territorial limits. *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592, 19 S. Ct. 553, 43 L. ed. 823. Taxes treated as a property tax, though a tax on gross income. *Cudahy Packing Co.* v. *Minnesota*, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827; *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, 12 S. Ct. 163, 35 L. ed. 994. A net income tax based on "barrel-miles" derived from the operation of barges in interstate commerce. *Higman Towing Co.* v. *Cocreham*, 70 F. Sup. 628, aff'd 165 F. 2d 789. A tax against the operation by a common carrier of motor vehicle, measured by gross receipts from transportation from point to point within the taxing state, though in the course of such transportation the territories of other states are entered. *Central Greyhound Lines* v. *Mealey*, 334 U. S. 653, 68 S. Ct. 1260, 92 L. ed. 1633. See *Lehigh Valley Railroad* v. *Pennsylvania*, 145 U. S. 192, 12 S. Ct. 806, 36 L. ed. 672; *Harman* v. *Chicago*, 147 U. S. 396, 13 S. Ct. 306,

37 L. ed. 216; *Ewing* v. *Leavenworth,* 226 U. S. 464, 33 S. Ct. 157, 57 L. ed. 303. A state unemployment insurance tax levied against employers of maritime employees engaged in labor aboard vessels on navigable streams, Congress not having exercised its power in the same field. *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306, 63 S. Ct. 1067, 87 L. ed. 1416. See *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613. Taxes assessed on activities within a state which can be segregated from the interstate activities of the taxpayer. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, 39 S. Ct. 522, 63 L. ed. 1084.

It will be seen from an examination of the foregoing authorities that, notwithstanding the exclusive authority of the government of the United States of America to license vessels using navigable waters, certain taxes may be levied and collected by the state. The case of *Streckfus Steamers* v. *Fox,* 14 F. 312, is a case wherein this state was permitted to collect sales and license taxes on sales of merchandise and business conducted on a steamboat using the Ohio River. The taxes considered in the *Streckfus* case are not comparable to those authorized by the taxing statute here considered. There is a distinction between conducting a taxable business on board a steamboat or other vessel and use of navigable waters for the purpose of transportation.

We have here a tax which is explicitly designated a privilege tax. The first paragraph of Code, 11-12A-3, as amended, taxes gross income at the rate of two and one-half per cent derived from purely intrastate business. The last paragraph of Section 3, id., provides for an apportionment of the taxes on gross income from interstate transportation.

We think that in view of the various conclusions reached in the cases cited above, the fact that the plaintiffs are operating under a license issued by the Federal Government and a certificate of convenience and neces-

sity granted by the Interstate Commerce Commission of the United States of America does not prevent the levy and collection of the taxes provided for in Code, 11-12A-3.

The next question relates to the applicability of the Northwest Ordinance of 1787. It has been repeatedly stated that after the admission of a state into the Union such ordinance is no longer of any force. The ordinance of 1787 "was itself superseded by the adoption of the Constitution of the United States, which placed all the States of the Union upon a perfect equality, which they would not be if the Ordinance continued to be in force after its adoption." *Strader, et al. v. Graham,* 10 Howard 82. In the case of *Escanaba Co. v. Chicago,* 107 U. S. 678, 688, 2 S. Ct. 185, 27 L. ed. 442, the Supreme Court of the United States used the following language: "The ordinance was passed July 13, 1787, one year and nearly eight months before the Constitution took effect; and although it appears to have been treated afterwards as in force in the territory, except as modified by Congress, and by the act of May 7, 1800, c. 41, creating the Territory of Indiana, and by the act of Feb. 3, 1809, c. 13, creating the Territory of Illinois, the rights and privileges granted by the ordinance are expressly secured to the inhabitants of those Territories; and although the act of April 18, 1818, c. 67, enabling the people of Illinois Territory to form a constitution and State government, and the resolution of Congress of Dec. 3, 1818, declaring the admission of the State into the Union, refer to the principles of the ordinance according to which the constitution was to be formed, *its provisions could not control the authority and powers of the State after her admission.* [Emphasis supplied] Whatever the limitation upon her powers as a government whilst in a territorial condition, whether from the ordinance of 1787 or the legislation of Congress, it ceased to have any operative force, except as voluntarily adopted by her, after she became a State of the Union. On her admission she at once became entitled to and possessed of all the rights of dominion and sovereignty which belonged to the original States. She was admitted,

and could be admitted, only on the same footing with them. The language of the resolution admitting her is 'on an equal footing with the original States *in all respects whatever.*' 3 Stat. 536. Equality of constitutional right and power is the condition of all the States of the Union, old and new. Illinois, therefore, as was well observed by counsel, could afterwards exercise the same power over rivers within her limits that Delaware exercised over Black Bird Creek, and Pennsylvania over the Schuylkill River. *Pollard's Lessee* v. *Hagen,* 3 How. 212; *Permoli* v. *First Municipality,* id. 589; *Strader* v. *Graham,* 10 id. 82". See *Sands* v. *Manistee River Imp. Co.,* 123 U. S. 288, 8 S. Ct. 113, 31 L. ed. 149; *Huse* v. *Glover,* 119 U. S. 543, 7 S. Ct. 313, 30 L. ed. 487; *Cincinnati* v. *Louis. & Nash. R. R. Co.,* 223 U. S. 390, 32 S. Ct. 267, 56 L. ed. 481; *Hawkins* v. *Bleakly,* 243 U. S. 210, 37 S. Ct. 255, 61 L. ed. 678. In the case of *Economy Light Co.* v. *United States,* 256 U. S. 113, 41 S. Ct. 409, 65 L. ed. 847, Mr. Justice Pitney, at page 120, used the following language: "To the extent that it pertained to internal affairs, the Ordinance of 1787—notwithstanding its contractual form—was no more than a regulation of territory belonging to the United States, and was superseded by the admission of the State of Illinois into the Union 'on an equal footing with the original States in all respects whatever.'" In the *Economy Light Co.* case, referring to previous cases on the subject of the Northwest Ordinance, the opinion goes on to state: "Those cases simply hold, in effect, that a State formed out of a part of the Northwest Territory has the same power to regulate navigable waters within its borders that is possessed by other States of the Union; that is to say, until Congress intervenes, the power of the State, locally exerted, is plenary; * * *."

The State of West Virginia was admitted to the Union by an Act of Congress, passed December 31, 1862, 12 Stat. 633, which conditionally admitted such state "into the Union on an equal footing with the original States in all respects whatever. * * *." The Act of 1862 was a conditional admission and provided that upon the adoption of

certain constitutional provisions by the people in the proposed State of West Virginia, relating to the children of slaves, the state should be admitted on proclamation of the President. The condition contained in the statute was performed in accordance with its terms, as shown by the proclamation of the President of the United States of America, No. 2 bearing date the 20th day of April, 1863. By that proclamation the Act admitting the State of West Virginia was declared to be in force and effect from and after sixty days from the date of the proclamation. See Appendix II, Statutes at Large, passed at the First Session of the 38th Congress of the United States. 13 Stat. 731.

The plaintiffs invoke Chapter XIV, Vol. 13, Virginia Hening's Statutes at Large, as inhibiting the levy of the tax imposed by the statutes here considered. The statute so invoked is commonly known as the Virginia Compact, and was passed on the eighteenth day of December, 1789. The pertinent part of the statute here considered is Section 11 of Chapter XIV, id., reading as follows: "Seventh, that the use and navigation of the river Ohio, so far as the territory of the proposed state, or the territory which shall remain within the limits of this Commonwealth lies thereon, shall be free and common to the citizens of the United States, and the respective jurisdictions of this Commonwealth and of the proposed state on the river as aforesaid, shall be concurrent only with the states which may possess the opposite shores of the said river." What has been said with reference to the Northwest Ordinance of 1787 is equally applicable to that statute. West Virginia is not limited in her sovereignty by the enactment of a statute by the Commonwealth of Virginia approximately seventy-four years before West Virginia was admitted into the Union by the Congress of the United States of America and thereby placed on an equal footing with other states "in all respects whatever."

The crucial and dispositive question is whether the statute here considered, as applied to gross income from interstate transportation, violates the commerce clause of

the Constitution of the United States, Article I, Section 8. The navigable waterways of this country are free. No one is entitled to exclusive right to use a waterway for transportation purposes by virtue of a license issued by a state. *Gibbons* v. *Ogden,* 9 Wheat. 1. It will be noted that Code, 11-12A, as amended, explicitly taxes the privilege of transporting passengers and freight by steamboat, steamship, or other floating property. However disguised, undoubtedly the statute authorizes a tax on a percentage of gross income derived by the plaintiffs from purely interstate business transacted in part in this state and in other states. The conclusion is inescapable that this statute, insofar as it attempts to tax gross income from interstate commerce on an apportionment basis, unreasonably burdens interstate commerce. That portion of the statute authorizing such tax even on the apportionment basis, as disclosed by this record, is contrary to the provisions of Article I, Section 8 of the Constitution of the United States. *Pipe Line Co.* v. *Hallanan,* 257 U. S. 265, 42 S. Ct. 101, 66 L. ed. 227. See *Joseph* v. *Carter & Weeks Co.,* 330 U. S. 422, 67 S. Ct. 815, 91 L. ed. 993; *Spector Motor Service* v. *O'Connor,* 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573; *Norton Co.* v. *Department of Rev.,* 340 U. S. 534, 71 S. Ct. 377, 95 L. ed. 517; *Cooney* v. *Mountain States Teleph. & Teleg. Co.,* 294 U. S. 384, 55 S. Ct. 477, 79 L. ed. 934; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. ed. 295; *Galveston, Harrisburg & c. Ry. Co.* v. *Texas,* 210 U. S. 217, 28 S. Ct. 68, 52 L. ed. 1031; *Phila. Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118, 30 L. ed. 1200; *Moran* v. *New Orleans,* 112 U. S. 69, 5 S. Ct. 38, 28 L. ed. 653.

There is certainly no taxable incident in connection with through traffic of the plaintiffs occurring within the State of West Virginia which would afford a basis for the tax. And the only incidents occurring in the State of West Virginia connected with one-point interstate traffic is delivery of shipments so classified to their destination, or the acceptance and embarkation of shipments at

points in this state destined to points in other states. Those incidents are not sufficient to support the tax.

Code, 11-12A-3, et seq., insofar as it imposes a tax on gross income from purely intrastate business, is valid. *Cornell Steamboat Co.* v. *Sohmer*, 235 U. S. 549, 35 S. Ct. 162, 59 L. ed. 355. That part of Code, 11-12A, which provides for a tax on gross income from interstate business is invalid. Therefore it is unnecessary to answer the questions relative to (a) the denial of due process of law, (b) whether the plaintiffs are doing business within the state, (c) whether the statute is applicable to the activities of plaintiffs, and (d) whether the tax is inapplicable to the activities of plaintiffs for the reason that the plaintiffs receive no commensurate benefits or the tax is incapable of being equitably applied to the activities of the plaintiff.

We do not mean to hold that the plaintiffs cannot be taxed in accordance with the provisions of Code, 11-12A-3, as amended, on gross income derived from the transportation of persons and freight from point to point within this state. On the contrary, we hold that such tax may be lawfully levied and collected. The contention of the plaintiffs that intrastate transportation travels through the State of Ohio is inconsequential and may be disposed of by reference to *Greyhound Lines* v. *Mealey, supra.*

Accordingly, we answer the certified questions as follows: (1) The Federal licensing and control of inland waterways and coastwise shipping exerted by the United States of America do not preclude the levying of a tax on gross income derived from intrastate business; (2) that the Northwest Ordinance and Virginia Compact do not inhibit the levying of such tax; and (3) that the tax on gross income derived by plaintiffs from interstate transportation imposes an unreasonable burden on interstate commerce and is, therefore, to that extent, void.

Code, 11-12A, as amended, being a valid legislative enactment in part, and invalid in part, the question arises as to the effect of this holding on the statute as a whole.

A part of a statute may stand though another part is invalidated "unless the two are so connected or dependent on each other in subject matter, meaning or purpose that the good cannot remain without the bad." *Loeb* v. *Columbia Twp.,* 179 U. S. 472, 21 S. Ct. 174, 45 L. ed. 280; *Berea College* v. *Kentucky,* 211 U. S. 45, 29 S. Ct. 33, 35, 53 L. ed. 81; *County Court* v. *Painter,* 123 W. Va. 415, 15 S. E. 2d 396. See *Lingamfelter* v. *Brown,* 132 W. Va. 566, 52 S. E. 2d 687, where the principle is discussed in some detail. Such rule is applicable though the valid or invalid parts of the statute are contained in the same section, the distribution into sections being purely artificial. *Loeb* v. *Columbia Twp., supra.*

That part of the statute here considered relating to intrastate commerce is not dependent for its validity upon that part of the statute authorizing a similar tax on apportioned gross income derived from interstate commerce.

We do not answer questions 4, 5 and 6, as the answer to the third question sufficiently disposes of the controlling issue here presented.

The ruling of the Circuit Court of Kanawha County in sustaining the demurrer is modified in accordance with the principles stated herein, and, as modified, is affirmed.

*Ruling modified and affirmed.*