STATE *ex rel.* G. THOMAS BATTLE,
STATE TAX COMMISSIONER

*v.*

THE BALTIMORE AND OHIO RAILROAD COMPANY,
*a corporation*

*and*

STATE *ex rel.* G. THOMAS BATTLE,
STATE TAX COMMISSIONER

*v.*

THE BALTIMORE AND OHIO RAILROAD COMPANY,
*a corporation*

(Nos. 12355 and 12356)

Submitted May 4, 1965.          Decided July 20, 1965.

*C. Donald Robertson*, Attorney General, *Andrew J. Goodwin*, Special Assistant Attorney General for appellant G. Thomas Battle.

*Steptoe & Johnson, William F. Wunschel, Steptoe & Johnson, Paul F. Mickey, George B. Mickum, 3rd*, Washington, D. C. *Kenneth E. Ekin, Richard Allen*, Baltimore, Md., for appellee.

HAYMOND, JUDGE:

This is a declaratory judgment proceeding instituted by the State of West Virginia at the relation of the predecessor of G. Thomas Battle, State Tax Commissioner of West Virginia, as plaintiff, in the Circuit Court of Kanawha County, West Virginia, on February 24, 1960, after written notice given by the defendant, The Baltimore and Ohio Railroad Company, a corporation, to the State Tax Commissioner, requesting him to institute such proceeding as provided by Section 2a, Article 1, Chapter 11, Code, 1931, as amended, to determine whether the defendant is entitled to a refund from the plaintiff for the alleged overpayment of privilege taxes assessed against the defendant for the years 1952, 1953 and 1954 under the provisions of Section 5, Article 12A, Chapter 11, Code, 1931, as amended, following the refusal by the State Tax Commissioner to grant a petition for a refund of such taxes filed by the defendant on October 15, 1956.

In his petition in this proceeding the State Tax Commissioner charged that the State of West Virginia had required the railroad company to include in its net income all income from all sources when paying its transportation privilege taxes to the State and did not distinguish between transportation and non-transportation income; that the income as reported by the defendant for the years in question was income from, related to, or in furtherance of the railroad business; and that the defendant was precluded from recovering sums paid for the year 1952 because its petition for refund was not filed within three years from the date of payment, as required by Section 2a, Article 1, Chapter 11, Code, 1931, as amended.

The defendant filed an aswer in which it alleged that the statute involved dealt with the business of the railroad which began and ended in the State of West Virginia and applied only to income from transportation; that the defendant was entitled to deduct eighty five per cent of its dividend income, as provided by Section 26 (b) of the Internal Revenue Code, 1939, in determining its net income to be reported to the State Tax Commissioner, which amount

was deductible from the net income reported to the federal government, as provided by Section 6 (3), Article 12A, Chapter 11, Code, 1931, as amended; and that the statute in question imposed a burden upon interstate commerce in violation of the Constitution of the United States. The prayer of the answer was that the defendant be granted a refund in the amount of $339,332.51 or in the alternative in the amount of $314,872.37. To the answer the plaintiff filed its replication in which it alleged that the defendant was estopped to plead that it had income within the State other than that related to or in furtherance of its railroad business.

The case was submitted for decision upon the foregoing pleadings and depositions, in behalf of the plaintiff, of representatives of the defendant and the exhibits filed with the depositions, and by its final judgment rendered March 11, 1964, accompanied by its written opinion which is filed as part of the record in this proceeding, the circuit court, after making certain findings of fact, held that the privilege tax imposed upon the defendant by the statute, as applied by the State Tax Commissioner, does not violate Article I, Section 8, the Commerce Clause, of the Constitution of the United States; that in computing such tax the State Tax Commissioner correctly included in the net income the income of the defendant from dividends, interest and capital gains and did not limit such income to that obtained from its transportation business; that in determining its net income the defendant was entitled to a deduction of eighty five per cent of its dividend income for each of the years 1952, 1953 and 1954 and a reduction of its tax for each of those years by deducting such dividend income in determining its net income; and that the refund claimed by the defendant for the year 1952 is not barred by the three-year limitation prescribed by Section 2a, Article 1, Chapter 11, Code, 1931, as amended. By its final order the circuit court required the plaintiff to refund to the defendant the sum of $187,460.13 and rendered final judgment to that effect.

From that judgment this Court granted an appeal upon the application of the plaintiff with respect to the judgment

of the circuit court in holding that the defendant is entitled to deduct eighty five per cent of its dividend income from the net income reported to the State Tax Commissioner and in holding that the three-year statute of limitations had not run on the taxes paid for the year 1952; and from the foregoing judgment this Court also granted an appeal upon the application of the defendant with respect to the judgment of the circuit court in holding that the tax imposed by Section 5 (b), Article 12A, Chapter 11, Code, 1931, as amended, did not violate Article I, Section 8, the Commerce Clause, of the Constitution of the United States as a tax upon the interstate business of the defendant and in holding that the income of the defendant from nontransportation business, consisting of dividends, interest and capital gains, was properly included in the net income of the defendant in calculating the amount of the tax assessed against the defendant. The two appeals, by agreement of the parties and the consent of this Court, have been consolidated and the questions involved were presented and submitted together for decision upon the written briefs and the oral arguments of the attorneys for the respective parties.

The material facts are not disputed and the questions for decision are questions of law.

The defendant is a corporation organized under the laws of the State of Maryland and is engaged in the railroad transportation business in the State of West Virginia. During the years 1952, 1953 and 1954 the railway system which it operated extended from New York City and Philadelphia in the east to Chicago and St. Louis in the west and from Rochester, Buffalo, Cleveland, Toledo and Detroit in the north to Charleston, Huntington, Louisville and Cincinnati in the south. Its railway facilities were used and its equipment and offices were located in twelve states and the District of Columbia, with its principal offices in the City of Baltimore, Maryland. As an interstate carrier it was subject to regulation by the Interstate Commerce Commission. During the years 1952, 1953 and 1954, a large amount of coal traffic carried by the defendant originated in West Virginia and was transported to other states. A

large majority of the ton-miles carried by the defendant in West Virginia either originated outside West Virginia and passed through West Virginia to other states or originated in West Virginia and was carried to other states. All of this traffic constituted interstate commerce. It also engaged in intrastate traffic which originated and terminated in West Virginia but the amount of intrastate traffic was small in comparison to the amount of its interstate traffic.

During the years in question the number of ton-miles of the intrastate freight traffic of the defendant in West Virginia was 101,999,415 for 1952; 102,033,940 for 1953 and 87,-936,945 for 1954. The total number of its ton-miles everywhere was 27,615,542,000 for 1952; 28,050,302,712 for 1953 and 23,739,913,446 for 1954; and the ratio of the intrastate ton-miles to the total ton-miles was approximately .0036% for 1952, approximately .0036% for 1953 and approximately .0037% for 1954. The total ton-miles of the intrastate and interstate traffic in West Virginia for 1952 was 7,561,310,000 and the ratio of such traffic to the overall total ton-miles of the defendant was approximately 27.38% for 1952; the total ton-miles of intrastate and interstate traffic in West Virginia for 1953 was 7,611,437,180 and the ratio of such traffic to the total overall ton-miles of the defendant was approximately 27.13% for 1953; and the total ton-miles of the intrastate and interstate traffic in West Virginia for 1954 was 6,633,098,121 and the ratio of such traffic to the overall total ton-miles of the defendant was approximately 27.94% for 1954. The net income of the defendant for 1952 was $26,991,474.92, of which $5,758,031.07 represented dividends and $1,987,038.59 represented interest; the net income for 1953 was $25,845,506.06, of which $5,947,951.76 represented dividends and $2,044,214.44 represented interest; and the net income for 1954 was $9,311,137.52, of which $5,446,755.74 represented dividends and $1,814,155.16 represented interest. The dividends were received by the defendant from railroad and manufacturing corporations and it made investments in such corporations for the sole purpose of realizing a profit. The dividend income was not derived directly from its transportation business and the interest re-

ceived during the years in question was realized from bonds and notes and amounts advanced or loaned by the defendant to various other corporations and from United States securities held by it and these loans were made and the purchase of interest-bearing securities was engaged in by the defendant for the purpose of receiving an income from interest; and this income was not earned or produced by the transportation business of the defendant. In 1954 the defendant, according to its application for an appeal, realized a net capital gain of $6,701,226.73 from the sale of securities of a nontransportation corporation.

For each of the years 1952, 1953 and 1954 the defendant filed its transportation privilege tax returns and paid taxes for those years in four quarterly installments as provided by Section 8, Article 12A, Chapter 11, Code, 1931, as amended. In its return for each year the defendant included as income subject to the tax the income received from dividends and interest and its capital gains for the year 1954. This the defendant contends was an error on its part. If all the income from dividends, interest and capital gains had been excluded from the total net income of the defendant for the three years in question, the defendant claims that it would be entitled to a refund of $314,872.37 and if the tax imposed by Section 5(b), Article 12A, Chapter 11, Code, 1931, as amended, was a tax upon interstate business of the defendant, in violation of the Commerce Clause of the Constitution of the United States, the defendant claims that it would have been entitled to a refund of $339,332.51.

The defendant assigns as error in the final judgment the action of the circuit court in holding that the privilege tax imposed by Section 5(b), Article 12A, Chapter 11, Code, 1931, as amended, as applied to it for the years 1952, 1953 and 1954, does not violate the Commerce Clause of the Constitution of the United States and in determining that the nontransportation income of the defendant for those years, consisting of dividends, interest and capital gains, is properly included in the net income subject to the privilege tax imposed by the statute.

The plaintiff assigns as error in the final judgment the action of the circuit court in holding that the defendant is entitled to deduct eighty five per cent of its dividend income in determining its net income subject to the tax and in holding that the three-year statute of limitations had not run on the amount of the tax payments for the year 1952, inasmuch as the petition of the defendant for a refund of taxes was not filed until October 15, 1956.

The statute, Section 5, Article 12A, Chapter 11, Code, 1931, as amended, which imposes by its terms what is referred to as an additional privilege tax involved in this proceeding and which forms the basis of the taxation claim of the State, contains, among others, these pertinent provisions: "In addition to the tax imposed in the preceding sections, every motor vehicle carrier operating on the public highways of the state and every railroad corporation, railroad car corporation, express corporation or company, pipe line corporation, telephone and telegraph corporation, airline corporation or company, and operator of a steamboat or other watercraft, for the transportation of passengers or freight, doing business in this state shall pay an annual privilege tax for each calendar year for the privilege of doing business in the state, to be determined as follows:

" * * * .

" (b)    The tax as to railroad corporations shall be equal to four per cent of the net income earned within the State, such income to be determined by ascertaining a sum bearing the proportion to total net income of the corporation that its business done in West Virginia, measured in tonmiles, bears to all business done, measured in like fashion: ".

It is clear from these words of the instant statute "The tax * * * shall be equal to four per cent of the net income earned within the State * * * , measured in ton-miles,", that the net income earned within the State and subject to the tax is income or receipts derived from both the intrastate business and the interstate business engaged in by the defendant in West Virginia. It is significant that the lan-

guage of Section 4, Article 12A, Chapter 11, Code, 1931, as amended, relating to motor vehicle carriers, railroad car corporations, express corporations or companies, pipe line corporations, telephone and telegraph corporations, airline corporations or companies, and operators of steamboats or other watercraft, imposing a normal annual privilege tax for the privilege of doing business in this State, unlike Section 5 (b) which does not do so, expressly provides that the tax shall be equal to the gross income from all business beginning and ending within the State multiplied by the particular rates fixed for each of such carriers. The language of Section 4 makes it clear that the tax is imposed solely upon the intrastate business of those carriers, whereas the language of Section 5 (b), relating to railroad corporations, by the use of different terminology, necessarily imposes the tax upon the net income derived from both the intrastate business and the interstate business of such corporation. In short, the statute in that respect imposes the tax on interstate income earned by the defendant in this State as well as its intrastate income and, in that respect is different from certain provisions of the statute under review in *American Barge Line Company* v. *Koontz*, 136 W. Va. 747, 68 S. E. 2d 56, which made separate provision for the imposition of the privilege tax upon the intrastate business of the carrier and for apportionment of such tax upon the gross income from its interstate transportation business.

After imposing the tax upon both the intrastate and interstate transportation business of the defendant the instant statute provides that the amount of the income subject to the tax shall be determined by ascertaining a sum bearing the proportion to the net income from its business in West Virginia, which as indicated applies to both the interstate and the intrastate income measured in ton-miles, bears to all such business of the defendant, both the intrastate and the interstate business being measured in ton-miles.

The evidence shows that the aggregate or the total of the ton-mile intrastate and interstate business engaged in in West Virginia for the year 1952, for example, is 7,561,310,000 ton-miles, or a ratio of 27.38063% of the total overall ton-

miles of 27,615,542,000 as compared to a ratio of .00369355% of the intrastate ton-miles of 101,999,415 of the total overall ton-miles of 27,615,542,000. Substantially the same ratios apply to the ton-mile figures for the years 1953 and 1954. These computations show that as the ratio becomes larger the unit of the net income from the intrastate and the interstate traffic of the defendant in this State subject to the tax becomes larger. But even if the apportionment were based upon a smaller ratio between the net income from the intrastate traffic of the defendant within this State and its total overall net income, the net income unit subject to the four per cent tax would necessarily be composed of income derived from both intrastate and interstate commerce. So on any ratio basis between the net income from the combined intrastate and interstate business of the defendant in West Virginia, or between its net income from its purely intrastate business and its total overall net income, the tax is necessarily imposed upon the net income derived from interstate commerce and the net income from interstate commerce within this State constitutes the much greater part or the much larger component of such composite or mixed net income and constitutes a considerable burden upon the interstate commerce engaged in by the defendant both within and without the State.

There can be no doubt whatever that the net income determined by the method or formula provided by the statute imposes the four per cent additional privilege tax upon the composite or mixed taxable net income unit or base, the components or factors of which consist of both net income from intrastate commerce and net income from interstate commerce in this State, and that the interstate component or factor is greater and produces a considerably larger tax than the smaller intrastate factor. In fact the reply brief in behalf of the defendant asserts that the tax as assessed by the State Tax Commissioner against both the intrastate and interstate commerce of the defendant is twenty seven times greater than it would have been if the tax had been imposed only on account of the intrastate commerce of the defendant.

According to numerous cases, the only method of determining a valid privilege tax imposed by the statute is to segregate the net income of the intrastate business of the defendant in this State from the net income of its interstate business in this State and to subject only the net income derived from its purely intrastate business to such tax. *Ratterman* v. *Western Union Telegraph Company,* 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229. The validity of such a method of imposing a privilege tax on a steamship carrier under a prior statute of this State, Section 3, Article 12A, Chapter 11, Code, 1931, as amended, which was repealed in 1959, was recognized and upheld in point 1 of the syllabus in *American Barge Line Company* v. *Koontz,* 136 W. Va. 747, 68 S. E. 2d 56, in this language: "Code, 11-12A-3, as amended, imposing an annual privilege tax on gross income from the business of transporting passengers and freight by 'steamboat, steamship or other floating property', insofar as the tax applies to gross income from transporting passengers and freight from a point within this State to another point therein, is a valid and constitutional exercise of the taxing power of the State of West Virginia."

The principle is firmly established by many decisions of both the state and federal appellate courts that a State is without power to impose a tax upon a foreign corporation for the privilege of engaging in interstate commerce and that such tax constitutes an unreasonable burden upon interstate commerce, in violation of Article I, Section 8 of the Constitution of the United States. Some of the many cases which so hold or recognize that principle are *Norfolk and Western Railway Company* v. *Field,* 143 W. Va. 219, 100 S. E. 2d 796; *American Barge Line Company* v. *Koontz,* 136 W. Va. 747, 68 S. E. 2d 56; *Harper* v. *Alderson,* 126 W. Va. 707, 30 S. E. 2d 521; *Commissioner of Corporations and Taxation* v. *Ford Motor Company,* 308 Mass. 558, 33 N. E. 2d 318, 139 A.L.R. 936; *Panhandle Eastern Pipe Line Company* v. *Michigan Corporation and Securities Commission,* 346 Mich. 50, 77 N. W. 2d 249, certiorari denied, 352 U. S. 890, 77 S. Ct. 127, 1 L. Ed. 2d 85; *General Motors Corporation* v. *Washington,* 377 U. S. 436, 84 S. Ct. 1564, 12 L. Ed. 2d

430; *Northwestern States Portland Cement Company* v. *Minnesota,* 358 U. S. 450, 79 S. Ct. 357, 3 L. Ed. 2d 421, 67 A.L.R. 2d 1292; *Railway Express Agency, Inc.* v. *Virginia,* 347 U. S. 359, 74 S. Ct. 558, 98 L. Ed. 757; *Michigan-Wisconsin Pipe Line Company* v. *Calvert,* 347 U. S. 157, 74 S. Ct. 396, 98 L. Ed. 583; *Spector Motor Service, Inc.* v. *O'Connor,* 340 U. S. 602, 71 S. Ct. 508, 95 L. Ed. 573; *Joseph* v. *Carter and Weekes Stevedoring Company,* 330 U. S. 422, 67 S. Ct. 815, 91 L. Ed. 993; *Freeman* v. *Hewit,* 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265; *Puget Sound Stevedoring Company* v. *State Tax Commission,* 302 U. S. 90, 58 S. Ct. 72, 82 L. Ed. 68; *Fisher's Blend Station, Inc.* v. *State Tax Commission,* 297 U. S. 650, 56 S. Ct. 608, 80 L. Ed. 956; *Cooney* v. *Mountain States Telephone and Telegraph Company,* 294 U. S. 384, 55 S. Ct. 477, 79 L. Ed. 934; *East Ohio Gas Company* v. *Tax Commission of Ohio,* 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171; *Sprout* v. *City of South Bend,* 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A.L.R. 45; *Alpha Portland Cement Company* v. *Commonwealth of Massachusetts,* 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A.L.R. 1219; *Ozark Pipe Line Corporation* v. *Monier,* 266 U. S. 555, 45 S. Ct. 184, 69 L. Ed. 439; *Air-Way Electric Appliance Corporation* v. *Day,* 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169; *Crew Levick Company* v. *Commonwealth of Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295; *Barrett* v. *City of New York,* 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483; *Galveston, Harrisburg and San Antonio Railway Company* v. *State of Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; *Allen* v. *Pullman's Palace Car Company,* 191 U. S. 171, 24 S. Ct. 39, 48 L. Ed. 134; *Crutcher* v. *Kentucky,* 141 U. S. 47, 11 S. Ct. 851, 35 L. Ed. 649; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311; *Ratterman* v. *Western Union Telegraph Company,* 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229; *Philadelphia and Southern Mail Steamship Company* v. *Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118, 30 L. Ed. 1200; *Fargo* v. *Michigan,* 121 U. S. 230, 7 S. Ct. 857, 30 L. Ed. 888; *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; *Pickard* v. *Pullman's Southern Car Company,* 117 U. S. 34, 6 S. Ct. 635, 29 L. Ed. 785; *Moran* v. *New Orleans,* 112 U. S. 69, 5 S. Ct. 38, 28 L. Ed. 653.

In *Norfolk and Western Railway Company* v. *Field*, 143 W. Va. 219, 100 S. E. 2d 796, a declaratory judgment proceeding involving the assessment of privilege taxes under Section 2 of the statute under review in the instant proceeding, this Court held in point 5 of the syllabus that "A state is denied the power to tax the privilege of a railroad corporation to engage in interstate commerce though such commerce is within the borders of the State."

In *American Barge Line Company* v. *Koontz*, 136 W. Va. 747, 68 S. E. 2d 56, a declaratory judgment proceeding to determine whether the privilege tax imposed by Section 3, Article 12A, Chapter 11, Code, 1931, as amended, which section was repealed in 1959, this Court held that the tax imposed by that statute on the gross income from the business of transporting passengers and freight by steamship, insofar as the tax applied to gross income from the transportation of passengers and freight from one point to another point within this State, was valid, but that the privilege tax on an apportioned percentage of gross income derived from interstate transportation by navigable streams on a ton-mile basis constituted an unreasonable burden upon interstate commerce and that the provision of the statute which imposed such tax contravened Article I, Section 8, the Commerce Clause, of the Constitution of the United States and was void. In the opinion this Court said: "It will be noted that Code, 11-12A, as amended, explicitly taxes the privilege of transporting passengers and freight by steamboat, steamship, or other floating property. However disguised, undoubtedly the statute authorizes a tax on a percentage of gross income derived by the plaintiffs from purely interstate business transacted in part in this state and in other states. The conclusion is inescapable that this statute, insofar as it attempts to tax gross income from interstate commerce on an apportionment basis, unreasonably burdens interstate commerce. That portion of the statute authorizing such tax even on the apportionment basis, as disclosed by this record, is contrary to the provisions of Article I, Section 8 of the Constitution of the United States. *Pipe Line Co.* v. *Hallanan*, 257 U. S. 265, 42 S. Ct. 101, 66

L. ed. 227. See *Joseph* v. *Carter & Weeks Co.*, 330 U. S. 422, 67 S. Ct. 815, 91 L. ed. 993; *Spector Motor Service* v. *O'Connor*, 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573; *Norton Co.* v. *Department of Rev.*, 340 U. S. 534, 71 S. Ct. 377, 95 L. ed. 517; *Cooney* v. *Mountain States Teleph. & Teleg. Co.*, 294 U. S. 384, 55 S. Ct. 477, 79 L. ed. 934; *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 38 S. Ct. 126, 62 L. ed. 295; *Galveston, Harrisburg & c. Ry. Co.* v. *Texas*, 210 U. S. 217, 28 S. Ct. 68, 52 L. ed. 1031; *Phila. Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 S. Ct. 1118, 30 L. ed. 1200; *Moran* v. *New Orleans*, 112 U. S. 69, 5 S. Ct. 38, 29 L. ed. 653."

The opinion in the *American Barge Line Company* case, discussing the numerous decisions of the Supreme Court of the United States which have upheld the validity of certain types of taxes which relate to or affect interstate commerce, contains this language: "Decisions of the Supreme Court of the United States have upheld state imposed ad valorem taxes levied on property used in interstate and foreign commerce. Illustrative: An ad valorem tax on ocean going ships having no situs other than the domicile of the owner. *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63, 32 S. Ct. 13, 56 L. ed. 96. An ad valorem tax on vessels used as a connecting link in transportation of interstate and foreign commerce. *Old Dominion Steamship Co.* v. *Virginia*, 198 U. S. 299, 25 S. Ct. 686, 49 L. ed. 1059. The authority of a state to tax that portion of a bridge across the Ohio River within its territorial limits. *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592, 19 S. Ct. 553, 43 L. ed. 823. Taxes treated as a property tax, though a tax on gross income. *Cudahy Packing Co.* v. *Minnesota*, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827; *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, 12 S. Ct. 163, 35 L. ed. 994. A net income tax based on 'barrel-miles' derived from the operation of barges in interstate commerce. *Higman Towing Co.* v. *Cocreham*, 70 F. Sup. 628, aff'd 165 F. 2d 789. A tax against the operation by a common carrier of motor vehicle, measured by gross receipts from transportation from point to point within the taxing state, though in the course of such transportation the territories of other states are entered. *Central Greyhound Lines* v. *Mealey*, 334 U. S. 653, 68 S. Ct.

1260, 92 L. ed. 1633. See *Lehigh Valley Railroad* v. *Pennsylvania,* 145 U. S. 192, 12 S. Ct. 806, 36 L. ed. 672; *Harman* v. *Chicago,* 147 U. S. 396, 13 S. Ct. 306, 37 L. ed. 216; *Ewing* v. *Leavenworth,* 226 U. S. 464, 33 S. Ct. 157, 57 L. ed. 303. A state unemployment insurance tax levied against employers of maritime employees engaged in labor aboard vessels on navigable streams, Congress not having exercised its power in the same field. *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306, 63 S. Ct. 1067, 87 L. ed. 1416. See *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 11 S. Ct. 876, 35 L. ed. 613. Taxes assessed on activities within a state which can be segregated from the interstate activities of the taxpayer. *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, 39 S. Ct. 522, 63 L. ed. 1084."

The cases cited in the above quotation, dealing with various types of state imposed taxes, are clearly distinguishable from the case at bar and they are incorporated in this opinion to emphasize the valid distinction between the different types of taxes dealt with in those decisions and the privilege tax imposed upon the net income earned by the defendant in this State determined by ascertaining a sum bearing the proportion to the net income that its business done in West Virginia measured in ton-miles bears to all its business measured in like fashion. It should be observed that in the foregoing quotation this Court classified and considered the tax involved in *Maine* v. *Grand Trunk Railway Company,* 142 U. S. 217, 12 S. Ct. 121, 12 S. Ct. 163, 35 L. ed. 994, discussed later in this opinion, as a property tax though it was determined and measured by gross income.

In *Panhandle Eastern Pipe Line Company* v. *Michigan Corporation and Securities Commission,* 346 Mich. 50, 77 N. W. 2d 249, certiorari denied, 352 U. S. 890, 77 S. Ct. 127, 1 L. Ed. 2d 85, the court said that a formula, used by the State Corporation and Securities Commission in computing foreign corporation franchise fees, including receipts from business not related to the corporation's intrastate business, was arbitrary and imposed an unjust burden on interstate commerce. The opinion in that case contains this quotation

from *Ratterman* v. *Western Union Telegraph Company*, 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229: "where the subjects of taxation can be separated so that that which arises from interstate commerce can be distinguished from that which arises, from commerce wholly within the State, the court will act upon this distinction, and will restrain the tax on interstate commerce while permitting the State to collect that arising upon commerce solely within its own territory."

In *Cooney* v. *Mountain States Telephone and Telegraph Company*, 294 U. S. 384, 55 S. Ct. 477, 79 L. Ed. 934, in considering a state imposed privilege or occupation tax and affirming the judgment of a trial court which enjoined the enforcement of such tax, the opinion contains these statements: "A privilege or occupation tax which a State imposes with respect to both interstate and intrastate business, through an indiscriminate application to instrumentalities common to both sorts of commerce, has frequently been held to be invalid. * * * . In the instant case, the tax, being indivisible and indiscriminate in its application, necessarily burdens interstate commerce."

In *East Ohio Gas Company* v. *Tax Commission of Ohio*, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171, the court said "It is elementary that a State can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom. *Pullman Co.* v. *Richardson*, 261 U. S. 330, 338; *New Jersey Tel. Co.* v. *Tax Board*, 280 U. S. 338, 346. And, while a State may require payment of an occupation tax by one engaged in intrastate and interstate commerce, the exaction in order to be valid must be imposed solely on account of the intrastate business without enhancement because of the interstate business done, and it must appear that one engaged exclusively in interstate business would not be subject to the imposition and that the taxpayer could discontinue the intrastate business without withdrawing also from the interstate business. *Sprout* v. *South Bend*, 277 U. S. 163, 170-171, and cases cited."

In *Air-Way Electric Appliance Corporation* v. *Day*, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169, in which the court invalidated a state tax imposed upon shares of the capital

stock of a foreign corporation engaged in intrastate and interstate commerce within the State, all of its property being the shares of stock subject to the tax, the opinion of the court contains this pronouncement: "That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside the State."

In *Allen* v. *Pullman's Palace Car Company*, 191 U. S. 171, 24 S. Ct. 39, 48 L. Ed. 134, the court held that "A State may not impose a tax which is in any way a burden upon interstate commerce; but it may impose a privilege tax upon corporations engaged in interstate commerce for carrying on that part of their business which is wholly within the taxing State and which tax does not affect their interstate business or their right to carry it on in that State."

In the frequently cited case of *Leloup* v. *Port of Mobile*, 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311, the court held that a general license tax on a telegraph company affects its entire business, interstate as well as domestic or internal, and is unconstitutional, and that the property of a telegraph company, situated within a State may be taxed by the State as all other property is taxed; but its business of an interstate character can not be thus taxed. In the opinion the court said: "no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress. This is the result of so many recent cases that citation is hardly necessary."

Though a state may by appropriate legislation require the payment of a privilege tax from a person engaged in both

intrastate and interstate commerce, the principle by which the validity or the invalidity of the tax is determined is that the tax, to be valid in its entirety, must be imposed solely on account of the intrastate business; that the amount of the tax is not increased because of the interstate business transacted; that the person taxed, if engaged exclusively in interstate commerce, would not be subject to the tax; and that the person taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Cooney* v. *Mountain States Telephone and Telegraph Company,* 294 U. S. 384, 55 S. Ct. 477, 79 L. Ed. 934; *East Ohio Gas Company* v. *Tax Commission of Ohio,* 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171; *Sprout* v. *City of South Bend,* 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A.L.R. 45.

In the *Cooney* case the court held that to sustain a state occupation tax on one whose business is both interstate and intrastate, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate business would not be subject to the tax; and that the one taxed could discontinue intrastate business without withdrawing from the interstate business. The opinion by Chief Justice Hughes contains these statements:

"There is no question that the State may require payment of an occupation tax from one engaged in both intrastate and interstate commerce. But a State cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination. *Leloup* v. *Mobile,* 127 U. S. 640. There are 'sufficient modes' in which the local business may be taxed without the imposition of a tax 'which covers the entire operations.' Id., p. 647. See *Williams* v. *Talladega,* 226 U. S. 404, 419. Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount

exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Sprout* v. *South Bend*, 277 U. S. 163, 171; *East Ohio Gas Co.* v. *Tax Commission*, 283 U. S. 465, 470.

"A privilege or occupation tax which a State imposes with respect to both interstate and intrastate business, through an indiscriminate application to instrumentalities common to both sorts of commerce, has frequently been held to be invalid. *Leloup* v. *Mobile*, supra; *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34, 46; *Crutcher* v. *Kentucky*, 141 U. S. 47, 59; *Adams Express Co.* v. *New York*, 232 U. S. 14, 29, 31; *United States Express Co.* v. *New York*, 232 U. S. 35, 36; *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 647, 648."

It is manifest that the imposition of the privilege tax against the defendant under Section 5 (b) of the statute does not satisfy or comply with the requirements for a valid tax of that character set forth in the three above cited cases of *Cooney* v. *Mountain States Telephone and Telegraph Company*, 294 U. S. 384, 55 S. Ct. 477, 79 L. Ed. 934; *East Ohio Gas Company* v. *Tax Commission of Ohio*, 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171; and *Sprout* v. *City of South Bend*, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A.L.R. 45. On the contrary the privilege tax created by that section is imposed on interstate business within the State and not solely on intrastate business; the amount of the tax is substantially increased by the inclusion of interstate business; the defendant company, if engaged exclusively in interstate business, would be subjected to the tax; and it could not obtain relief from the tax imposed on interstate business by discontinuing its intrastate business unless it also withdrew from its interstate commerce.

In the leading and often cited case of *Galveston, Harrisburg and San Antonio Railway Company* v. *State of Texas*, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031, the court said that "Neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of

words, can take away our duty to consider its nature and effect. If it bears upon interstate commerce among the States so directly as to amount to a regulation in a relatively immediate way it will not be saved by name or form." In that case the court considered a statute of the State of Texas which imposed a tax upon railroad companies equal to one per cent of their gross receipts and, as to those companies whose receipts included receipts from interstate commerce, the tax was held to be a burden on interstate commerce and as such violative of the Commerce Clause of the Federal Constitution. In the same case the earlier case of *Maine* v. *Grand Trunk Railway Company,* 142 U. S. 217, 12 S. Ct. 121, 12 S. Ct. 163, 35 L. Ed. 994, cited and relied upon by the plaintiff, was discussed and distinguished.

In the *Maine* case the court considered a statute which provided that every corporation, person or association operating any railroad in that state shall pay to the state treasurer, an annual excise tax for the privilege of exercising its franchise in the state which, along with other taxes, should be in lieu of all taxes upon such railroad, its property and its stock. The statute also provided that when a railroad lies partly within and partly without the state or is operated as a part of a line or system extending beyond the state, the tax should be equal to the same proportion of the gross receipts in the state, as therein provided, and its amount determined in the following manner: The gross transportation receipts of such railroad, line or system, as the case may be, over its whole extent, within and without the state, shall be divided by the total number of miles operated to obtain the average gross receipts per mile, and the gross receipts in the state shall be taken to be the average gross receipts per mile multiplied by the number of miles operated within the state. The statute further provided that when the average receipts per mile shall not exceed certain designated sums the tax should be based on certain percentages of such sums. In the *Maine* case, the court, by a five to four decision, held that the tax ascertained by the prescribed formula did not conflict with the Commerce Clause of the Constitution of the United States and was a tax which the state was empowered to levy. In the major-

ity opinion the court, in the first paragraph, referred to the tax as an excise tax upon the defendant corporation for the privilege of exercising its franchise within the State of Maine but in a later paragraph of the opinion the court said that there was no levy by the statute upon the receipts derived from the business either in form or in fact and that such receipts constituted simply the means of ascertaining the value of the privilege conferred. The dissenting opinion by Justice Bradley, concurred in by Justices Harlan, Lamar and Brown, vigorously asserted that the tax in question "is a tax on the receipts of the company derived from international transportation.", and expressed the view that the decision constituted a departure from prior decisions of the court, including the case of *Philadelphia and Southern Steamship Company* v. *Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118, 30 L. Ed. 1200, in which it was held that a tax upon the gross receipts of the company was void because the receipts were derived from interstate and foreign commerce. As previously indicated, the case has been referred to in the opinion in *American Barge Line Company* v. *Koontz,* 136 W. Va. 747, 68 S. E. 2d 56, and there characterized "as a property tax, though a tax on gross income."

The *Maine* case was discussed at length in the majority opinion by Justice Holmes in *Galveston, Harrisburg and San Antonio Railway Company* v. *State of Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031, and though the *Maine* case was not overruled it was expressly characterized as "the extreme case." In distinguishing the two cases and in holding that the tax under consideration in the Galveston case amounted to an attempt to regulate commerce among the States and as such was violative of the Commerce Clause of the Constitution of the United States, the court said " * * * the railroads contend that the case is governed by *Philadelphia & Southern Mail Steamship Co.* v. *Pennsylvania,* 122 U. S. 326. The counsel for the State rely upon *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, and maintain, if necessary, that the later overrules the earlier case.

"In *Philadelphia & Southern Mail S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, it was decided that a tax upon the gross

receipts of a steamship corporation of the State, when such receipts were derived from commerce between the States and with foreign countries, was unconstitutional. We regard this decision as unshaken and as stating established law. * * *

"* * * . But the extreme case came earlier. In *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217, 'an annual excise tax for the privilege of exercising its franchise,' was levied upon every one operating a railroad in the State, fixed by percentages, varying up to a certain limit, upon the average gross receipts per mile multiplied by the number of miles within the State when the road extended outside. This seems at first sight like a reaction from the *Philadelphia & Southern Mail Steamship Company* case. But it may not have been. The estimated gross receipts per mile may be said to have been made a measure of the value of the property per mile. That the effort of the State was to reach that value and not to fasten on the receipts from transportation as such was shown by the fact that the scheme of the statute was to establish a system. The buildings of the railroad and its lands and fixtures outside of its right of way were to be taxed locally, as other property was taxed, and this excise with the local tax were to be in lieu of all taxes. The language shows that the local tax was not expected to include the additional value gained by the property being part of a going concern. That idea came in later. The excise was an attempt to reach that additional value. The two taxes together fairly may be called a commutation tax. See *Ficklen* v. *Taxing District of Shelby County*, 145 U. S. 1, 23; *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 697; *McHenry* v. *Alford*, 168 U. S. 651, 670, 671.

" 'By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution.' *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 689. See *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania*, 158 U. S. 431, 438, 439. The question

is whether this is such a tax. It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can. Neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bears upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form. *Stockard* v. *Morgan,* 185 U. S. 27, 37; *Asbell* v. *Kansas,* 209 U. S. 251, 254, 256.

"We are of the opinion that the statute levying this tax does amount to an attempt to regulate commerce among the States. The distinction between a tax 'equal to' one per cent of gross receipts and a tax of one per cent of the same, seems to us nothing, except where the former phrase is the index of an actual attempt to reach the property and to let the interstate traffic and the receipts from it alone. We find no such attempt or anything to qualify the plain inference from the statute taken by itself."

In discussing the question of the validity of local taxes measured by gross receipts from interstate commerce and the application of the Commerce Clause of the Constitution of the United States, the court, in *General Motors Corporation* v. *Washington,* 377 U. S. 436, 84 S. Ct. 1564, 12 L. Ed. 2d 430, used this language: "* * * local taxes measured by gross receipts from interstate commerce have not always fared as well. Because every State has equal rights when taxing the commerce it touches, there exists the danger that

such taxes can impose cumulative burdens upon interstate transactions which are not presented to local commerce. Cf. *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U. S. 157, 170 (1954); *Philadelphia Mail & S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 346 (1887). Such burdens would destroy interstate commerce and encourage the re-erection of those trade barriers which made the Commerce Clause necessary. Cf. *Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511, 521-522 (1935). And in this connection, we have specifically held that interstate commerce cannot be subjected to the burden of 'multiple taxation.' *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* supra, at 170. Nevertheless, as we have seen, it is well established that taxation measured by gross receipts is constitutionally proper, if it is fairly apportioned."

In the *Calvert* case the court used this quotation from *McLeod* v. *J. E. Dilworth Company,* 322 U. S. 327, 64 S. Ct. 1023, 88 L. Ed. 1304: "The very purpose of the Commerce Clause was to create an area of free trade among the several States. That clause vested the power of taxing a transaction forming an unbroken process of interstate commerce in the Congress, not in the States." If any one State can tax interstate commerce within its borders every other State through which such commerce passes could multiply such taxes and the ultimate effect of such multiple taxation would be to restore the customs barriers which the Commerce Clause was designed to prevent and to defeat the purposes for which the clause was created. See *Michigan-Wisconsin Pipe Line Company* v. *Calvert,* 347 U. S. 157, 74 S. Ct. 396, 98 L. Ed. 583.

For the reasons stated in its opinion in the *Galveston* case, the *Maine* case, involving a tax upon the property of the company determined by receipts from its transportation business, is distinguishable from and does not control the decision in the case at bar. As the privilege tax imposed by Section 5 (b) of the statute is a tax upon the net income or receipts from the interstate business of the defendant railroad company in this State and as such results in a substantial and unreasonable burden on its interstate commerce because of the considerable disparity between its

much smaller intrastate commerce in this State, which constitutes only approximately .0033 per cent of the entire commerce of its system, and the much greater interstate commerce of the defendant in this State, which is approximately 27 per cent, or more than one-fourth of its total overall interstate business, such tax is constitutionally invalid and to the extent that the statute imposes such tax on the interstate commerce of the defendant the statute is null and void as violative of the Commerce Clause, Article I, Section 8, of the Constitution of the United States. Point 3, syllabus, *Norfolk and Western Railway Company* v. *Field,* 143 W. Va. 219, 100 S. E. 2d 796, in which this Court held that "A taxing statute, though valid on its face, may be invalid when applied to particular circumstances or conditions of a particular taxpayer." See also *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747; *State* v. *Overholt,* 111 W. Va. 417, 162 S. E. 317. In *Ratterman* v. *Western Union Telegraph Company,* 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229, the headnote to the opinion states that "A single tax, assessed under the laws of a State upon receipts of a telegraph company which were partly derived from interstate commerce and partly from commerce within the State, and which were capable of separation but were returned and assessed in gross and without separation or apportionment, is invalid in proportion to the extent that such receipts were derived from interstate commerce, but is otherwise valid; * * *." In *Michigan-Wisconsin Pipe Line Company* v. *Calvert,* 347 U. S. 157, 74 S. Ct. 396, 98 L. Ed. 583, the Court said: "It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. *Memphis Natural Gas Co.* v. *Stone,* 335 U. S. 80, 87 (1948); *Western Live Stock* v. *Bureau of Revenue,* supra, at 258. And if a genuine separation of the taxed local activity from the interstate process is impossible, it is more likely that other states through which the commerce passes or into which it flows can with equal right impose a similar levy on the goods, with the net effect of prejudicing or unduly burdening commerce."

From the foregoing authorities it is clear that when it appears that the net income received from intrastate commerce and the net income received from interstate commerce earned by a railroad company within this State, are capable of separation but have not been separated and the amount of each has not been separately determined and the income from interstate commerce is considerably larger than the income from intrastate commerce, a privilege tax imposed by the State upon such composite net income from intrastate and interstate commerce is an unreasonable burden upon interstate commerce in violation of Article I, Section 8, the Commerce Clause, of the Constitution of the United States, and to the extent that such tax is applied to the net income from interstate commerce it is an invalid tax.

That the tax here involved is imposed upon the net income of the defendant derived from both intrastate and interstate commerce in this State is clear from the provisions that such tax shall be "equal to" four per cent of such net income earned within the State, the words "equal to" clearly meaning, as pointed out in the *Galveston* case, that the tax is a tax "of" four per cent of such net income. It is also clear that the words "equal to" the designated percentage do not constitute "the index of an actual attempt to reach the property and to let the interstate traffic and the receipts from it alone.", which is mentioned in the opinion in *Galveston, Harrisburg and San Antonio Railway Company* v. *State of Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 994.

In considering the income includable in the net income subject to the additional privilege tax imposed by the statute, here in controversy between the parties, it is necessary to give consideration to the express language of the applicable provisions of the statute. The net income subject to the tax is the "net income earned within the State" and such taxable income is determined by ascertaining a sum bearing the proportion to total net income of the corporation that its "business done in West Virginia," *measured in ton-miles,* bears to all business done, *measured in like fashion.* To be subject to the tax, the income must have been earned within the State by the railroad company from its "business

done in West Virginia" based upon and "measured in ton-miles." It is clear from this language that the business done in West Virginia, measured in ton-miles, means transportation business and does not refer to or include income derived from any other source. Moreover the dividend and the interest income of the defendant was not earned by it but by other persons or corporations from business conducted by them, only a few of which engage in business in West Virginia. The agencies which earned the dividends and owed the interest paid to the defendant were separate and distinct legal entities which were not wholly owned or controlled by the defendant and their earnings as such were subject to taxation under applicable taxing statutes. As it is clear that the defendant did not earn any of the dividends, interest or capital gains from the sale of securities during the years 1952, 1953 and 1954, the income from those sources, also not having been derived from the transportation business of the defendant, was not within the taxable net income mentioned in the statute and should not have been included in the net income subject to the tax.

On October 10, 1956, the Attorney General of this State rendered an opinion concerning the nature and character of income subject to the additional privilege tax dealt with in various sections of Article 12A, Chapter 11, Code, 1931, as amended, including Section 5 (b) involved in this proceeding. No. 30, Forty Seventh Biennial Report and Opinions, July 1, 1956 to June 30, 1958, pages 69-72. In that opinion he emphasized the nature of the tax as a tax upon the privilege of doing business in this State rather than a tax upon receipts or income. In the opinion, which apparently gave rise to the claim of the defendant for a refund of the taxes involved in this proceeding, are these statements: "It is to be noted that the statute, in providing for a report of the gross income from all business done within the State, specifically provides that the business contemplated is business beginning and ending entirely within the State. This, of course, would necessarily mean transportation business. In providing for a report of the total gross income of the business wherever conducted, we believe that it is clear that the term 'business' is used in the same sense

as the business done within the State, namely, the transportation business. Likewise, we believe that when the statute refers to net income of the business wherever conducted, it contemplates the net income of the transportation business. We are not unmindful of the fact that the net income returned to the Federal Government for Federal Income Tax includes income not only from transportation business, but income from all activities. However, we are of the opinion that the Legislature clearly contemplated the net income of the transportation business to be the base of the tax imposed by Article 12A."

The conclusion of the Attorney General, as expressed in his opinion, was that income received by a railroad from securities and property held by it as an investment and not used in furtherance of its transportation business should not be included in the computation of the tax. In support of that conclusion the opinion cited the case of *Spreckels Sugar Refining Company* v. *McClain,* 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496, in which the Supreme Court of the United States, in considering a federal tax upon persons engaged in the business of refining sugar measured by the gross receipts of the business, held that neither interest paid to the taxpayer on its deposits in banks nor dividends received by it from investments in the stock of other companies were receipts from the business of refining sugar and should not be included in the computation of the tax. This Court agrees with the conclusion reached and expressed by the Attorney General in that opinion. It follows that the dividends, interest and capital gains from the sale of securities received by the defendant railroad company, do not constitute net income earned by it from its business done in this State measured in ton-miles and should not be included in determining the base of the tax imposed by Section 5(b), Article 12A, Chapter 11, Code, 1931, as amended. The tax imposed by that section of the statute applies only to net income derived from the transportation business of the defendant railroad company and does not apply to its income from dividends, interest and capital gains from the sale of securities of a nontransportation entity, as such income is not earned by it within this State

and is not a part of the net income derived from its transportation business on a ton-mile basis, within the meaning of the statute.

The language of Section 5 (b) indicates clearly and without ambiguity that only the net income from the transportation business of the defendant railroad company is subject to the tax imposed by the statute; but even if the language were ambiguous and such as to create a doubt as to the income to which it applies, any such doubt, under the well established rule, should be resolved in favor of the defendant taxpayer and against the State Tax Commissioner. Statutes which impose a tax are strictly construed and where there is a doubt as to the meaning of such statutes they are construed in favor of the taxpayer and against the State. *J. D. Moore, Inc.* v. *Hardesty,* 147 W. Va. 611, 129 S. E. 2d 722; *Glessner's Estate* v. *Carman,* 146 W. Va. 282, 118 S. E. 2d 873; *State ex rel. Lambert* v. *Carman,* 145 W. Va. 635, 116 S. E. 2d 265; *Fry* v. *City of Ronceverte,* 93 W. Va. 388, 117 S. E. 140.

The plaintiff complains and assigns as error the action of the circuit court in holding that the defendant in computing its net income for each of the years 1952, 1953 and 1954 was entitled to deduct eighty five per cent of its dividend income and by so doing reduce such net income by the amount of such dividend income. The plaintiff contends that though such percentage of the annual dividend income of the defendant should be excluded from its income tax, the percentage of such dividend income should not be deducted from the gross income in determining the net income subject to the privilege tax imposed by Section 5 (b). Determination of the net income subject to the privilege tax by the method contended for by the plaintiff would, of course, enlarge the net income by the amount of the dividend percentage, instead of reducing it by that amount and would increase the net income base or unit in ascertaining the amount of the privilege tax. There is no merit in the foregoing contention of the plaintiff.

Section 6, Article 12A, Chapter 11, Code, 1931, as amended, requires the taxpayer to file an annual return which

shall set forth the net income of the business of the tax-payer and provides in paragraph (3) that for this purpose "the determination of net income for purposes of the net income tax due the Government of the United States under the laws of the United States shall be taken as final; * * * ." The statute properly construed and applied simply means that the income on which an annual income tax is due the United States shall be the net income of the taxpayer subject to the privilege tax. In 1933 when Article 12A was enacted the Federal Revenue Act of 1932, in Section 13 (a), imposed a tax upon the net income of every corporation; in Section 21 defined net income as the gross income less allowable deductions; and in Section 23 (p) provided that in computing net income of domestic and certain foreign corporations dividends received by them were allowable deductions. By Section 26 (b) of the Internal Revenue Acts of 1936 and 1938 a credit of eighty five per cent of the dividends of a corporation was allowed against the net income of the corporation. This allowance was continued under Section 26 (b) of the Internal Revenue Code of 1939 as a credit against the taxable income of the corporation until the enactment of the Internal Revenue Code of 1954 which provided in Section 243 (a) that "there shall be allowed as a deduction an amount equal to 85 per cent of the amount received as dividends" of the corporation. The Internal Revenue Code of 1954 restored the technical dividend deduction and adopted the words "taxable income" instead of the words "net income" contained in previous statutes. Regardless of the terminology used it is clear that the intent of the Legislature in enacting Section 6 (3) was to make the corporate income taxed by the United States, whether designated as net income or taxable income or by any other like terms, the base for the imposition of the privilege tax imposed by the statute. Otherwise to view the provisions of Section 6 (3) would be to invite and produce confusion and uncertainty if and when the terminology of the federal income statutes should be materially changed in any way. It follows that in computing its annual net income for the purpose of determining the privilege tax imposed by the statute the defendant railroad company was entitled to de-

duct from its gross income eighty five per cent of its annual dividend income and to reduce its taxable net income by that amount, instead of including such dividend income as a part of its thus enlarged net income and then crediting such dividend income against its income tax liability. Under the applicable provisions of prior Internal Revenue Acts and the Internal Revenue Code of 1954, and of Section 6 (3), Article 12A, Chapter 11, Code, 1931, as amended, a railroad corporation subject to the provisions of Article 12A of the statute is entitled to deduct eighty five per cent of its annual dividend income from its annual gross income in computing the annual net income of such corporation subject to the annual privilege tax imposed by Section 5 (b) of the statute. The action of the circuit court in holding that the defendant in computing its net income subject to the privilege tax was entitled to reduce such net income by deducting eighty five per cent of the amount of its annual dividend income was in all respects correct and proper.

The plaintiff also complains of the action of the circuit court in holding that no part of the claim of the defendant for a refund of the alleged overpayment of taxes by it is barred by the three-year limitation prescribed by Section 2a, Article 1, Chapter 11, Code, 1931, as amended. That section of the statute, relating to refund of taxes erroneously collected, provides that "any taxpayer claiming to be aggrieved through being required to pay any tax into the treasury of this state, may, within three years from the date of such payment, and not after, file with the official or department through which the tax was paid, a petition in writing to have refunded to him any such tax, or any part thereof, the payment whereof is claimed by him to have been required unlawfully; * * *". The petition of the defendant for the claimed refund was filed with the State Tax Commissioner on October 15, 1956, which was less than three years from December 24, 1953, the date of the payment of the fourth and last installment of the 1952 tax. Section 8, Article 12A, Chapter 11, Code, 1931, as amended, relating to the payment of the taxes imposed by the statute provides that "The total amount of tax imposed by this article shall

be paid on or before the first day of April following the close of the calendar year, * * * . The taxpayer may by writing, filed with the tax commissioner, elect to pay the tax in four equal quarterly installments in which case the first installment shall be paid on the date hereinabove prescribed, the second installment shall be paid on the first day of the fourth month, the third installment shall be paid on the first day of the seventh month, and the fourth installment shall be paid on the first day of the tenth month, after such date." It is not asserted that the defendant did not properly elect to pay the tax for the year 1952 in four equal quarterly installments and it appears that the fourth installment of the 1952 tax was paid on December 24, 1953 which was before the expiration of the first day of the tenth month after April 1, 1953. As the three-year period of limitation did not begin to run until the date of the payment of the last installment of the 1952 tax on December 24, 1953, and as the petition for the claimed refund was filed October 15, 1956, which was considerably less than three years after the payment on December 24, 1953, such payment, being within the three-year period of limitation, was not barred but instead its operation was to exempt the payment of the 1952 tax from the bar of the statute. The action of the circuit court in so holding was correct and proper. The three-year limitation prescribed by Section 8, Article 12A, Chapter 11, Code, 1931, as amended, does not begin to run against the claim of a taxpayer for a refund of taxes erroneously paid until the payment in full, or the payment of the last installment, of the annual privilege tax imposed by Section 5(b) of Article 12A; and the payment of the last installment of such tax before the first day of the tenth month following the day the total tax becomes due and payable removed the claim for a refund from the bar of the statute of limitations which, in such instance, does not apply to such claim of a corporate taxpayer when it appears that such taxpayer, within three years from the date of the payment of the last installment, has properly filed a petition for a refund of such taxes, and does not operate as a bar to the relief to which such taxpayer is entitled in a proceeding to determine its right to such refund.

For the reasons stated and under the authorities cited and discussed at length in this opinion the final judgment of the Circuit Court of Kanawha County, insofar as it holds that the privilege tax imposed under Section 5 (b), Article 12A, Chapter 11, Code, 1931, as amended, is not a tax upon the interstate commerce engaged in by the defendant and that such tax applies to the net income of the defendant determined by including its income from dividends, interest and capital gains instead of its net income derived solely from its transportation business in this State, is reversed and set aside; but in all other respects such judgment is affirmed; and this proceeding is remanded to the circuit court with directions that it enter a judgment requiring the State Tax Commissioner to refund to the defendant, in the manner provided by Section 2a, Article 1, Chapter 11, Code, 1931, as amended, the taxes erroneously paid by it, the amount of such refund to be determined by that court in accordance with the principles enunciated in this opinion.

*Reversed in part;*
*affirmed in part;*
*remanded with directions.*